Ray **MOBERG**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 1119–89, 1120–89.

Court of Criminal Appeals of Texas, En Banc.

Jan. 16, 1991.

Rehearing Overruled June 19, 1991.

---

David R. Weiner, San Antonio (Court appointed), for appellant.

Fred G. Rodriguez, Dist. Atty., Tina Tussay and Jay Brandon, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

The appellant, Ray Moberg, was convicted on his plea of guilty to two separate charges of sexual assault of a child, and assessed punishment by the trial court at consecutive twenty year terms of confinement in the Texas Department of Criminal Justice, Institutional Division. On direct appeal to the Fourth Court of Appeals in San Antonio, appellant challenged the trial court's rulings in denying his motions to suppress evidence seized from a motel room wherein he had been a guest. The court of appeals rejected appellant's contentions and affirmed his convictions. *Moberg v. State*, 770 S.W.2d 930 (Tex.App.— San Antonio 1989). In the court of appeals, as well as in this Court, appellant contends that the search of the motel room violated the Fourth and Fourteenth Amendments of the United States Constitution, Article I, § 9 of the Texas Constitution, as well as Articles 18.01, 18.02 and 38.23 of the Texas Code of Criminal Procedure.

In rejecting all of appellant's assertions the court of appeals resolved that the evidence seized from the motel room in question was validly obtained as a result of a legal inventory search and additionally the consent of the motel manager, under the factual circumstances of the case authorized a valid search.[1] We granted appel-

---

1. We accept the court of appeals' implicit conclusion that appellant preserved his right to

appeal pursuant to Article 44.02, V.A.C.C.P., which permits an appeal by the defendant, not-

lant's petition for discretionary review to determine whether the court of appeals was correct in its holdings.

We deem a recitation of the facts concerning appellant's arrest and the subsequent search of the motel room occupied by him to be necessary to the appropriate disposition of the issues presented. The facts as set out by the court of appeals are sufficient for this purpose:

Both complainants, S.B. and L.F., are young girls who were respectively three and five years old when the offense occurred. In February of 1985, Moberg enticed and kidnapped S.B. while she was playing, sexually abused her, made photographs of the sexual events, and returned her to her neighborhood, where she was eventually reunited with her family. Moberg did the same thing to L.F. in May of 1985. Each case went unsolved until January 1987, because the police could not identify the perpetrator.

In the early hours of January 11, 1987, the police arrested Moberg at a motel pursuant to a valid arrest warrant involving an entirely separate offense—aggravated sexual assault of his teenage daughter. After Moberg had been taken to the police station, the officers returned to the motel room at approximately 4:00 a.m., were allowed entry by the manager, and removed Moberg's belongings, including a suitcase, an ice chest, a laundry basket, and various items of clothing. All of these things were inventoried and taken to the police department's property room. The laundry basket contained 94 photographs, some simply showing nude young girls and other [sic] showing a male engaged in sexual activity with various young girls. Even

though Moberg was staying alone in the motel room and had rented it for only one night, he did not ask the police or the motel manager to turn over his belongings to anyone, nor did he otherwise ask to make arrangements for their safekeeping. Several days later, investigators identified L.F. and S.B. from the pictures, and ultimately the charges involved in the present appeals were brought.

In addition to the facts set out by the court of appeals, we were able to glean from the record made at the motion to suppress that after appellant was arrested and transported to the county jail, police officers apparently obtained an "evidentiary search" warrant somewhere around 2:00 a.m., and an initial search was conducted pursuant to this warrant. Although muddled, the record clearly indicates that the "inventory search" of the motel room was conducted at 4:00 a.m., wherein all the evidence subject to the motion to suppress was seized by San Antonio police officers. In a surprising turn of events, the district attorney at the motion to suppress hearing chose not to rely on the search warrant to justify the search of the motel room, but rather, elected to rely on the doctrine of "inventory searches." Although anything but crystal clear, there is some indication in the record that the law enforcement officers procuring the warrant failed to comply with the requirements of Article 18.01(c), V.A.C.C.P.[2]

In addressing the argument that the search was justified as a valid "inventory search," the court of appeals commenced its discussion by appropriately citing the seminal United States Supreme Court decisions relevant to the doctrine of legitimate

---

withstanding he pled guilty, if all conditions are satisfied as required by the statute.

**2.** Article 18.01(c) states:

A search warrant may not be issued pursuant to Subdivision (10) of Article 18.02 of this code unless the sworn affidavit required by Subsection (b) of this article set forth sufficient facts to establish probable cause: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence

that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Only a judge of a municipal court of record who is an attorney licensed by the State of Texas, statutory county court, district court, the Court of Criminal Appeals, or the Supreme Court may issue warrants pursuant to Subdivision (10) of Article 18.02 of this Code.

inventory searches, e.g., *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and then opined:

> *Lafayette* expressly applied the inventory search concept to "any container or article in [the arrestee's] possession." 462 U.S. at 648, 103 S.Ct. at 2610. In addition to cases concerning automobiles and luggage carried by the arrestee, one recent case has upheld an inventory search of a hotel room after its occupant was arrested. See *United States v. Pryor,* 652 F.Supp. 1353, 1370–72 (D.Me. 1987). We believe that under the facts of this case the inventory search was proper as applied to the arrestee's property from which the arrest had separated him, and which might not have been properly itemized and cared for if the arresting authorities had not taken protective action.
>
> By their very nature inventory searches take place only when a suspect is lawfully in custody, as Moberg was at the time the police returned to the motel room. When there has been an arrest, a standard routine inventory search of the arrestee's belongings serves important governmental interests. Such searches help protect the police department from false claims of theft, and they protect the property itself from unauthorized interference or pilferage. Inventory searches can also protect the police from danger, but we reject any suggestion that evidence found during an inventory can be introduced only when the arrestee was within reach of items that could have hidden a weapon. Protection of the police is only one of several purposes served by inventory searches. Even when no property is inventoried, the police are entitled to protect themselves by searching and seizing items in the area within the arrestee's reach. Inventory searches have been upheld primarily because when police are allowed to itemize and account for the property in the arrestee's possession, there is less risk that

such property will be lost or stolen, or that the arrestee will accuse the police of stealing or losing his possessions. [citation omitted] Those purposes are well served by applying inventory search principles to the present case. [Footnotes and citations omitted]

*Moberg,* supra, at 931–932.

The court of appeals then concluded that the "inventory search" conducted in this case was proper because: (1) Moberg's occupancy was for one night only at the motel; (2) he was the sole occupant; (3) subsequent to his arrest and prior to being transported to the jailhouse he made no effort to ask that others be called to take custody of the property; and (4) after appellant's arrest his personal property was *probably* even less secure than property seized in a more routine automobile inventory situation. *Moberg, id.,* at 933.

■ For an assortment of reasons we are compelled to disagree with the court of appeals. In *South Dakota v. Opperman,* supra, the Supreme Court thus concluded that because of the inherent mobility of automobiles they are unlike homes and are therefore subject to pervasive and continuing regulations and controls which has resulted in a "diminished" expectation of privacy. By virtue of the transitory nature of the automobile several factors were recognized which made inventory searches "reasonable" under the Fourth Amendment after the vehicle was *legally impounded:* (1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from inherent danger. In addition, the High Court observed that Opperman had left his car illegally parked for an extended period which subjected the vehicle to impoundment, and was therefore not present to make other arrangements for safekeeping to his belongings inside the vehicle. Finally the Court reaffirmed *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), by noting that the inventory search was carried out in accordance with standard procedure in the local police de-

partment, a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function and no evidence was presented that such a search was a pretext concealing an investigatory police motive.

 We commence with the initial premise articulated in *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), that a guest in a hotel room is protected against unreasonable searches and seizures, and the general requirement for a search warrant is not suspended merely because of the guest status of the occupant of the room. Long before *Stoner, id.,* this Court recognized this proposition under our own Article I, Sec. 9, in *Tarwater v. State,* 160 Tex.Crim. 59, 267 S.W.2d 410 (1954). Notwithstanding the appellant in this particular case registered under an alias, we fail to perceive how that standing alone diminished appellant's expectation of privacy in the room he had let. We observe that the doctrine of inventory search is usually applicable when authorities have legitimately come into possession of belongings or containers of the arrestee and they must inventory the contents of the property initially lawfully taken into custody. The most prominent difference between this case and one where a standard inventory search occurs is that the belongings and containers inventoried by the police were located in appellant's temporary dwelling. Appellant, at the motion to suppress hearing, testified as to his legitimate privacy interest in the motel room, that he had registered for the night paying for one night's lodging in advance and that he intended to check-out sometime the following morning. The record is also replete with other objective indicia that appellant enjoyed a "reasonable expectation of privacy" in a motel room. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Appellant had brought his personal belongings into the room and treated the room as if it was a place where he intended to repose for the evening. In fact when the police entered the room pursuant to the arrest warrant, appellant was on the bed in his underwear. Certainly appellant was treating the room as a place where a traveler could obtain privacy away from all interlopers.

The State cites us to *United States v. Lipscomb,* 435 F.2d 795 (5th Cir.1970), for the proposition that appellant did not enjoy the same degree of privacy as he would have in his home. In *Lipscomb,* the arrestees, when confronted with the police outside their motel room, requested to use the bathroom in the room, and the police acquiesced in the request. Once inside, the suspects were arrested and, as the police commenced escorting the occupants to police headquarters, the co-defendant made a personal request that the police take all personal belongings in the room. Among the items confiscated was a suitcase which was eventually inventoried by the police. Obviously the suitcase was the proper subject of an inventory search. The government never claimed nor did the court of appeals hold that any search of Lipscomb's motel room was justified under the principles of inventory search. Rather, the luggage was taken into custody at the request of one of the defendants and once having taken the property into lawful custody an inventory of its contents was appropriate. *Lipscomb, id.,* is totally inapplicable to the factual situation presented by this case. The items seized from the motel room were not originally taken into custody on the basis of an inventory.

Appellant's arrest was effected pursuant to an arrest warrant, he was allowed to dress and was then transported to the jailhouse. Although the premises may have been secured, no immediate contemporaneous search was conducted, and at least one officer testified that out of an abundance of caution a decision was made to wait until the search warrant was procured. See *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Looking at other circumstances in the case *sub judice,* the search conducted in no way serves the factors which are utilized to support a conclusion that an inventory search would be constitutionally reasonable. Gaylord Tellefeson, manager of the Motel 6, where appellant was arrested, testified that when a patron leaves property in

the room the motel keeps it in their custody for six months. Thus, it is apparent that Moberg's property left in the motel room was not vulnerable to vandalism or theft because appellant vacated his property as a result of his early departure from the room due to being arrested. Had the police not taken appellant's personal belongings the motel management would have gathered the property and stored it for at least six months and returned the property if appellant was able to redeem it. It would be mere speculation to conclude that appellant's belongings would be safer in the custody of the police. Nor is it clear that the San Antonio Police Department would be subject to any civil liability had they left the property in the motel room. It is true that at the time of appellant's arrest, he stood mute, and did not make an effort to ask that others be called to come and care for his possessions. However such innocuous silence is just as consistent with a desire that the police leave his possessions in the motel room and that he choose to run the gauntlet that the motel would take possession of his belongings or that at a later date he would contact someone to take custody. Under the circumstances in this case established at the motion to suppress hearing, we cannot see that the police had any legal obligation to warrant an inventory search.

In *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Supreme Court sustained an inventory search of the defendant's backpack which was located in his van which had been impounded subsequent to Bertine's arrest for driving while under the influence of alcohol. After the impoundment of the van, officers inventoried it in accordance with local procedures. In the process of the inventory officers opened the backpack, discovered other canisters, therein finding the contraband. In determining that the inventory in question was proper, the Court commented:

> In the present case, as in *Opperman* and *Lafayette*, there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in *Opperman* and *Lafayette* are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to the police or others that may have been posed by the property. [Footnotes omitted]

In addition the Court, in reference to the procedures utilized, opined:

> Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion *so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.* Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it. *There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity.* [Footnotes omitted] [Emphasis added]

The record demonstrates that the officers in this case were neither operating under any type of standardized criteria nor within the realm of a proper inventory search. This Court has long held that an inventory search must not deviate from police department policy and the State may satisfy this burden by showing (1) an inventory policy existed and (2) that the policy was followed. *Evers v. State*, 576 S.W.2d 46, 50, n. 5 (Tex.Cr.App.1978). At first, Officer John Flowers was of the opinion that it was the policy of the San Antonio Police Department to inventory motel rooms where the registered guest had been arrested and the room left vacant. However, this testimony was modified when Flowers subsequently admitted that there was no such policy and the departmental policy manual had no policy covering this

situation.[3] We can only conclude that the officers were endowed with so much latitude that the doctrine of inventory searches could be turned into "a purposeful and general means of discovering evidence of crime, ..." *Bertine*, supra, at 376, 107 S.Ct. at 743; *Florida v. Wells*, 495 U.S. ——, ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1, 6 (1990).

■ The pivotal fact which extracts the search conducted here from the realm of a valid inventory search was that not only did the police obtain an arrest warrant for appellant they also attempted and obtained a search warrant for the motel room. Appellant was a criminal suspect, and it can only be inferred from this circumstance that the police intended to procure evidence in the motel room linking him with criminal activity. It is only when, for whatever reason, the State realized they could not utilize the warrant as a basis for the search that they sought the justification of "inventory searches." The doctrine of "inventory search" may not be invoked as a mere afterthought and used as a ruse or pretext for a general rummaging in order to discover incriminating evidence. *Florida v. Wells, id.* We now hold that the search conducted did not fit within the criteria of a proper inventory search and the search cannot be sustained on that basis. Simply put, under the facts presented the police officers did not have the lawful right to perform caretaking functions regarding the motel room. *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981); *Guillett v. State*, 677 S.W.2d 46 (Tex.Cr.App.1984).

■ Notwithstanding that they determined that the search was justified under the principles of inventory search the court of appeals also found that the consent of the motel manager was sufficient to justify the search of appellant's motel room:

We also conclude that the search was valid because the motel manager gave the officers his voluntary and lawful consent. After Moberg was in custody, the officers returned to the motel and sought the manager's consent to enter the room. During their conversation the manager learned that Moberg had registered under a false name, and the officers learned that the room was rented only until noon that day. The manager allowed the officers into the room, where they inventoried and removed Moberg's ice chest, clothes, and clothes basket, which contained the polaroid photographs depicting female children performing acts of sex on the private parts of an unidentified male.

After noting that "... the consent search would have been valid if the officers had waited until noon and Moberg's right to occupancy had terminated," the court then arrived at the conclusion that the factual context here was really not significantly different to mandate an inapposite resolution. In support of this determination it relied upon *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *United States v. Rahme*, 813 F.2d 31 (2nd Cir.1987); *United State v. Ramirez*, 810 F.2d 1338 (5th Cir.1986), *cert. denied*, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987); *United States v. Rambo*, 789 F.2d 1289 (8th Cir.1986); *Voelkel v. State*, 717 S.W.2d 314 (Tex.Cr.App.1986). It can certainly be gleaned from this compilation of authority the well settled rule that a guest in a hotel or motel loses his reasonable expectation of privacy and consequently any standing to object to any search of the premises once the rental or occupancy period has terminated. In each and every case cited for one reason or another the room was either vacated or the rental period of the room had expired. The occupant had relinquished control of the motel or hotel room and the operator of the motel/hotel was clearly authorized under the particular circumstance to consent to the search of the vacated room. Had the police waited to obtain consent from Tellefeson, the motel manager, after expiration of Moberg's occupancy is a question not before this

---

**3.** The court of appeals concluded that the search was lawful as an inventory search and that the *police reasonably and in good faith inventoried pursuant to a standard written policy.* We have examined the record and find that there was unequivocally no written policy covering the situation involved.

Court. The fact is that the officers made a conscious choice not to wait and search the room knowing that appellant was still a guest at the motel in spite of his arrest. Like in *Stoner*, supra, the appellant did not consent to the search nor did the police have any basis to believe the manager had been authorized by him to permit the police to search the room. In no tribunal has the State sought to argue the validity of a search or attempt to sustain the search as one contemporaneous with a valid arrest. The State cites no authority to this Court for the proposition that once a guest of a motel is arrested he relinquishes any reasonable expectation of privacy in the room automatically. We, therefore, hold that the search of appellant's motel room was constitutionally infirm both under Article I, Sec. 9, of the Texas Constitution and the Fourth and Fourteenth Amendments of the United States Constitution. The trial court abused its discretion in failing to grant the appellant's motion to suppress.

Consistent with this Court's ruling in *McKenna v. State*, 780 S.W.2d 797 (Tex.Cr. App.1989), the judgments of the court of appeals are reversed and the causes remanded to the trial court for action not inconsistent with this opinion.

McCORMICK, P.J., and WHITE, J., dissent.

TEAGUE and MALONEY, JJ., not participating.