Nos. 04-01-00761-CR; 04-01-00769-CR & 04-01-00770-CR



Shayne Miles CARSON,


Appellant



v.



The STATE of Texas,


Appellee



From the 216th Judicial District Court, Gillespie County, Texas 


& 216th Judicial District Court, Kendall County, Texas


Trial Court Nos. 4021; 3857 & 3858


Honorable Stephen B. Ables, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: September 25, 2002


AFFIRMED

 Shayne Miles Carson was indicted for three counts of burglary. After the trial court denied
Carson's motions to suppress, he pled guilty and was sentenced to two 15-year terms of
imprisonment and 10 years probation. On appeal, Carson argues that the trial court improperly
denied his motions to suppress. We hold the trial court did not abuse its discretion and affirm the trial
court's judgment.

Background


 The underlying case concerns three burglaries -- two committed in Kendall County on April
2, 2001, and one committed in Gillespie County on April 3, 2001. On April 4, 2001, a deputy from
the Kendall County Sheriff's Department observed a vehicle matching the description of Carson's
vehicle disregard a stop sign. Carson was stopped for this offense. Upon being stopped, Carson failed
to produce a valid driver's license and falsely identified himself as "Jack Carson." Carson was
arrested and transported to the Kendall County jail. (1) An inventory search of Carson's vehicle
revealed many of the items reported missing by the Kendall and Gillespie County burglary victims.
 On April 5, 2001, Carson was taken to a magistrate for arraignment on: (1) disregarding a
stop sign; (2) not having a valid driver's license; (3) falsely identifying himself; and (4) the two
Kendall County burglaries. The magistrate informed Carson of his rights, including his right to an
attorney. This same day, authorities conducted a warrantless search of Carson's motel room. The
search uncovered more of the property taken from the burglarized homes. 

 On April 6, 2001, Kendall County Sheriff's Deputy Van Landingham ("Deputy Landingham")
attempted to interview Carson. Carson refused to speak with the deputy and orally invoked his right
to counsel. Deputy Landingham terminated his communications with Carson upon Carson's
invocation of his right to counsel. The following day, Carson was arraigned by a magistrate for the
Gillespie County burglary. The magistrate informed Carson of his rights, including his right to an
attorney.

 On April 9, 2001, Gillespie County Deputy James Segner ("Deputy Segner") contacted
Carson to remind Carson of his right to speak to an attorney and to brief Carson on the evidence
against him. No questions were asked of Carson during this meeting. The following day, Carson
made a written request to speak with Deputy Segner. (2) Segner met with Carson upon receiving
Carson's request and interrogated him. This meeting lasted five minutes and focused solely on the
location of some guns taken during the Gillespie County burglary. (3) Carson told the deputy the
location of some of the property taken during the Gillespie County burglary. 

 On April 16, 2001, Carson made a written request to speak with Deputy Segner. (4) Deputy
Segner met with Carson on April 18, 2001, after receiving Carson's request. Carson orally confessed
to committing all of the burglaries. Carson also told Segner that he would like to speak with Deputy
Landingham. The following day, Deputy Landingham met with Carson. Carson made a written
statement confessing to the burglaries.

 On May 14, 2001, Deputy Segner put Carson's April 18th confession into writing and took
it to Carson for his review. Carson signed the written statement. The following day, Carson filed an
official written request for counsel.

 Before trial, Carson moved to suppress the written and oral statements, as well as the
evidence acquired from the search of his motel room. Carson complained the evidence was acquired
in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution and
articles 38.22 and 38.23 of the Texas Code of Criminal Procedure. The trial court denied the motions
to suppress. Consequently, Carson pled guilty to three counts of burglary of a habitation. 

 Standard of Review

 We review a trial court's ruling on a motion to suppress under an abuse of discretion standard.
Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We view the evidence in the light
most favorable to the trial court's ruling and afford almost total deference to the trial court's
determination of historical facts that the record supports, especially when the fact findings are based
on an evaluation of the witnesses' credibility and demeanor. Id. We review de novo the court's
application of the law to the facts. Id.

Discussion

 Carson raises two issues on appeal. First, Carson complains the trial court erred in denying
his motions to suppress his oral and written statements because they were taken after he invoked his
right to counsel, but before he had an opportunity to speak with an attorney. Second, Carson
complains the trial court erred in denying his motion to suppress evidence confiscated from a
warrantless search of his motel room because he neither consented to the search nor did exigent
circumstances exist to justify the search. We overrule both of Carson's challenges and affirm the trial
court's judgment.


 Failure to Suppress Oral & Written Statements


 Because Carson pled guilty to the alleged offenses, we must conduct a preliminary analysis
to determine whether he is even permitted to complain on appeal about the trial court's suppression
rulings. See Gonzales v. State, 966 S.W.2d 521, 524 (Tex. Crim. App. 1998). When deciding
whether to address the merits of a claim regarding the denial of a motion to suppress prior to a guilty
plea, we apply a two-prong test. Id. First, we must identify "the fruits" that the trial court held would
not be suppressed. Id. Second, we must determine that these fruits have "somehow been used" by
the State to secure the defendant's conviction. Id. Under this latter prong, our inquiry is satisfied
whenever the complained of evidence is inculpatory. Id. at 523. If it is not clear from the testimony
and other evidence what "the fruits" are, we need not address the merits of the defendant's claim. Id.
Likewise, if the fruits have not "somehow been used" by the State, we need not address the merits
of the claim. Id. 

 Applying the first prong, the "fruits" that were not suppressed by the trial court are Carson's
multiple confessions to the alleged offenses. Applying the second part of our analysis, Carson's
statements are incriminating. Because both prongs of our preliminary inquiry are satisfied, we
address Carson's first issue.

 Carson challenges the trial court's suppression rulings based on the Fifth Amendment. Carson
claims his statements were taken after he invoked his right to counsel, but before he had the
opportunity to speak with an attorney. Once a suspect invokes his right to counsel, interrogation
must cease until counsel is made available, unless the accused himself initiates further communication
with authorities. Minnick v. Mississippi, 498 U.S. 146, 151-52 (1990); Edwards v. Arizona, 451 U.S.
477, 484-85 (1981); Muniz v. State, 851 S.W.2d 238, 252 (Tex. Crim. App. 1993). This rule seeks
to ensure "that any statement made in a subsequent interrogation is not the result of coercive
pressures." Minnick, 498 U.S. at 151. 

 A suspect may, however, waive his Fifth Amendment right to counsel even after having
already invoked it. Id. at 154-56. To establish such waiver, the State must demonstrate: (1) the
suspect personally initiated the contact with the authorities that led to the waiver; and (2) the suspect
knowingly and intelligently waived his previously invoked right. Etheridge v. State, 903 S.W.2d 1,
18 (Tex. Crim. App. 1994). Whether a waiver is shown depends upon the particular facts and
circumstances surrounding each case, including the background, experience, and conduct of the
suspect. Muniz, 851 S.W.2d at 253. "If the State's evidence shows nothing more than that the
accused responded to further police-instigated custodial interrogation, a valid waiver is not shown."
Id. 


 April 10th inculpatory statements 


 It is undisputed that Carson unequivocally invoked his right to counsel before Deputy Segner
conducted his April 10th interrogation. What is disputed is whether Carson himself affirmatively
reinitiated conversations with authorities. To determine whether the trial court abused its discretion
in denying Carson's motions to suppress, we shall apply the two-pronged test outlined in Etheridge.
See Etheridge, 903 S.W.2d at 18.

 Under the first prong of the test, we must determine whether Carson personally initiated the
contact with the authorities that led to the waiver of his right to counsel. At the suppression hearing,
Deputy Segner testified Carson made a written request to speak with him on April 10th. Carson,
however, controverted Segner's testimony by testifying that Deputy Segner initiated their meeting.
In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000). Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony,
even if that testimony is not controverted. Id. Because this issue ultimately depends on the credibility
of the witnesses, we defer to the trial court's finding that Carson initiated the April 10th meeting.

 We must now determine whether the defendant knowingly and intelligently waived his
previously invoked right to counsel. The record in this case supports the conclusion that Carson
knowingly waived his previously invoked right. It is apparent that Carson was familiar with his
constitutional rights and understood that he did not have to speak with authorities. Carson asserted
his right to counsel after being taken into custody, and he received Miranda warnings from a
magistrate on both April 5th and April 7th. Moreover, Deputy Segner advised Carson to hire an
attorney on April 9th. These circumstances support a conclusion that Carson knowingly waived his
right to counsel. Accordingly, the trial court did not abuse its discretion by denying Caron's motion
to suppress his April 10th statements.


 April 18th oral confession


 The record indicates Deputy Segner met with Carson on April 18th because Carson made a
written request to speak with him two days earlier. Because Carson was fully aware of his
constitutional rights when he spoke with Deputy Segner, the trial court did not abuse its discretion
by denying Caron's motion to suppress his oral confession. 


 April 19th written confession to Deputy Landingham


 According to Deputy Segner, Carson expressed a desire to speak with Deputy Landingham
during their April 18th meeting. The following day Deputy Landingham met with Carson and
obtained a written confession from him. Whether Carson in fact expressed a desire to speak with
Landingham depends on witness credibility; therefore, we defer to the trial court's findings on this
issue. See Ross, 32 S.W.3d at 855. Because Carson was fully aware of his constitutional rights when
he spoke with Landingham, the trial court did not abuse its discretion by denying Caron's motion to
suppress his April 19th confession.


 May 4th written confession to Deputy Segner


 According to Deputy Segner, he offered to draft Carson's written confession for him because
Carson indicated that he was a poor writer. Deputy Segner complied with Carson's request and met
with Carson for a review of the confession on May 4th. Whether Carson in fact expressed a desire
to speak with Segner following the drafting of the statement depends on witness credibility; therefore,
we defer to the trial court's findings on this issue. See Ross, 32 S.W.3d at 855. Because Carson was
fully aware of his constitutional rights when he met with Segner following the drafting of the written
statement, the trial court did not abuse its discretion by denying Caron's motion to suppress his May
4th confession.

 Because there is evidence supporting the finding that Carson initiated each of the meetings
resulting in the statements he moved to suppress, Carson's right to counsel was not violated. 

 Carson's first issue is overruled. 

II. Failure to Suppress Evidence Confiscated From Motel

 Before we can examine the propriety of the trial court's ruling on Carson's motion to suppress
evidence confiscated from the motel, we must conduct the same preliminary two-part analysis we
conducted above. See Gonzales, 966 S.W.2d at 524. First, we must identify "the fruits" that the trial
court held would not be suppressed. Id. Second, we must determine that these fruits have "somehow
been used" by the State to secure Carson's conviction. Id. If either of these prongs are not satisfied,
we need not address the merits of Carson's claim. Id. 


 Applying the first prong, the fruits the trial court held would not be suppressed are the articles
of stolen property. Applying the second prong of our analysis, the evidence is incriminating. Because
both prongs of our preliminary inquiry are satisfied, we address Carson's second issue. 

 In his second issue, Carson contends the trial court erred by denying his motion to suppress
evidence confiscated from his motel room because he neither consented to this search nor did exigent
circumstances exist to justify a warrantless search of his room. A guest in a motel loses his reasonable
expectation of privacy, and thus standing to object to any police search of the premises, once the
rental period has terminated. Moberg v. State, 810 S.W.2d 190, 196 (Tex. Crim. App. 1991). 

 In the case at bar, the police searched Carson's motel room between noon and 1:00pm on
April 5, 2001. The record, however, contains conflicting evidence as to when Carson's rental period
expired. Deputy Segner testified Carson's rental period expired 11:00am on April 5th. (5) Carson
controverted Segner's testimony by testifying that his rental period did not expire until either April
6th or 7th. Because the trial court is the sole trier of fact and judge of the credibility of the witnesses
at the hearing on a motion to suppress, we defer to the trial court's finding that Carson's rental period
expired on April 5th. See Ross, 32 S.W.3d at 855.

 Once the rental period expired, Carson had no reasonable expectation of privacy in the room.
Because Carson's rights were not violated by the entry into his room, we overrule Carson's second
issue.


Conclusion

 Based on the foregoing, the trial court did not abuse its discretion by denying Carson's
motions to suppress. Accordingly, the trial court's judgments are affirmed.


Catherine Stone, Justice

DO NOT PUBLISH 


1. According to Carson, he invoked his right to counsel upon being sent to the Kendall County jail. Carson
alleged he made six verbal and four written requests for counsel over the ensuing two week period. Only one of the
alleged written requests, dated May 15, 2001, appears in the record.
2. This written request is not included in the record.
3. Deputy Segner testified that he asked Carson about his "attorney situation" during their meeting. According
to Segner, Carson simply told him that he was still working on contacting an attorney and said nothing more on the
issue.
4. This written request is included in the record.
5. The record indicates that the authorities were in the process of obtaining a search warrant for Carson's motel
room on the evening of April 4th. However, no search warrant was obtained because officers discovered Carson's
rental period was due to expire the next morning and that the motel planned on removing Carson's property once
Carson's rental period expired.