

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00402-CR

---

**DYLAN EUGENE TAYLOR, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 274th District Court
Hays County, Texas
Trial Court No. CR-20-5525-C, Honorable Don R. Burgess, Presiding

---

September 3, 2024

OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Dylan Eugene Taylor appealed his conviction for being a felon who possessed a firearm. Three issues pend for review. He argues that 1) the trial court erred in failing to grant his motion to suppress the inventory search of his vehicle; 2) the evidence was insufficient to prove he actually possessed the weapon found in the vehicle, and 3) a

---

[1] The Texas Supreme Court transferred this appeal from the Third Court of Appeals. Thus, we are bound by the latter's precedent should it conflict with ours. TEX. R. APP. P. 41.3.

mistrial should have been granted due to a purported *Brady* violation. We reverse the cause and remand to the trial court for further proceedings.

### Background

In late November 2020, a woman named Asia called police requesting assistance in dealing with her ex-boyfriend, appellant. Police responded and encountered appellant inside his car. The vehicle was parked illegally by a stop sign and at a location which permitted appellant to spy on Asia.

Being told that appellant was the subject of one or more outstanding arrest warrants, the officers removed him from the car, placed him in handcuffs, walked him to a nearby police vehicle, sat him within it, and began investigating both Asia's complaint and the actual existence of the arrest warrants. Upon determining that warrants were outstanding, the officer placed him under arrest and decided to impound his vehicle. As part of the impoundment process, one officer began an inventory search of the car and discovered a firearm in its center console. He contacted dispatch to determine if appellant was a felon, which status dispatch confirmed. That resulted in his prosecution and ultimate conviction by a jury for the aforementioned offense.

### Issue Two—Sufficiency of the Evidence

Because it grants the greatest relief available if sustained, we begin our review by considering Issue Two. *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010) (holding that we first consider attacks founded upon the sufficiency of the evidence because they grant the greatest relief available if sustained). Through it, appellant argues the evidence was insufficient to prove he possessed the firearm. We overrule the issue.

2

The standard of review is well-established and described in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004). We apply it here.

To establish the offense of possession of a firearm by a felon, the State must prove that the accused 1) exercised care, control, or custody over the firearm; 2) was conscious of his connection to the firearm; and 3) knowingly possessed it. *Auvenshine v. State*, Nos. 07-15-00251-CR, 07-15-00253-CR, 07-15-00254-CR, 07-15-0255-CR, 2016 Tex. App. LEXIS 3392, at *9 (Tex. App.—Amarillo Mar. 31, 2016, no pet.) (mem. op., not designated for publication). Furthermore, "possession" means the exercise of actual care, custody, control, or management. *Id.*; TEX. PENAL CODE ANN. § 1.07(a)(39). And, it is a voluntary act when the accused knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *Auvenshine*, 2016 Tex. App. LEXIS 3392, at *9.

Next, if the firearm is neither on the person of the accused nor in his exclusive possession, the evidence must otherwise link him to the item. *Id.* at *9-10. Such may include proof that 1) the firearm was in plain view; 2) the accused owned the vehicle in which the firearm was found; 3) appellant was in close proximity and had ready access to the weapon; 4) his conduct and demeanor indicated a consciousness of guilt; 5) he had a special connection or relationship to the firearm; 6) the weapon was found in an enclosed place; 7) occupants in the vehicle gave conflicting statements about relevant matters; 8) the accused exercised control over the vehicle containing the firearm; 9) he possessed other contraband; and 10) he uttered incriminating statements tying him to the weapon. *Id.* What is of import is not the number of links shown but rather the logical

3

force arising from those shown. *Id.* Their logical force must illustrate that the connection between the accused and the firearm was more than fortuitous. *Id.* at *11. And, that the accused may not "own" the weapon does not alone require acquittal for the test is possession, not ownership. *Clay v. State*, No. 13-04-583-CR, 2006 Tex. App. LEXIS 7505, at *8 (Tex. App.—Corpus Christi Aug. 24, 2006, no pet.) (mem. op., not designated for publication).

Viewing the record in the light most favorable to the jury's verdict, we find the following evidence. First, appellant owned the vehicle in which the weapon was found. Second, the officers discovered him in that vehicle and mere inches from the center console within which lay the handgun. Third, the console was unlocked, rendering the weapon readily available to him. Fourth, appellant sat alone in the car at night spying upon his ex-girlfriend. Fifth, his ex-girlfriend informed the police appellant periodically carried a gun. Sixth, though appellant denied the presence of a weapon in the car when asked by the police if one was within it, he directed the police to roll up its windows, lock the vehicle, and give him its keys prior to being escorted to the nearby patrol unit. Together, these circumstances allow a rational jury to reasonably deduce, beyond reasonable doubt, that appellant knowingly exercised care, custody, control, or management, i.e., possessed, the firearm.

***Issue One—Motion to Suppress***

Via his first issue, appellant contends the trial court erred in denying his motion to suppress evidence, i.e., the firearm, discovered during the purported inventory search of the vehicle. We sustain the issue.

4

The standard of review is that discussed in *State v. Ruiz*, 577 S.W.3d 543 (Tex. Crim. App. 2019). We apply it here.

Next, the Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Stallons v. State*, No. 02-18-00002-CR, 2019 Tex. App. LEXIS 3166, at *7-8 (Tex. App.—Fort Worth Apr. 18, 2019, no pet.) (mem. op., not designated for publication). A police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if conducted pursuant to a lawful impoundment of the vehicle. *Id.*

That is, to qualify as a valid inventory search, the latter must be conducted in good faith and pursuant to a reasonable, standardized police procedure "designed to accomplish the 'caretaking' function." *Calhoun v. State*, No. 03-16-00691-CR, 2017 Tex. App. LEXIS 4835, at *5-6 (Tex. App.—Austin May 26, 2017, no pet.) (mem. op., not designated for publication). Moreover, the burden lies with the State to demonstrate the existence of an inventory policy and the officer's compliance with it. *Id.* at *6. Indeed, our Court of Criminal Appeals stressed the need for compliance when saying "[t]o be lawful, an inventory search ***must not deviate*** from police department policy." *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991) (emphasis added). That said, we turn to the circumstances at bar.

The record contains evidence of 1) an official policy adopted by the Kyle Police Department concerning inventory searches and 2) an officer representing his search conformed with it. Yet, the latter is belied by undisputed testimony in the form of the officer's own admissions and a video of the search.

5

Per the policy, 1) "[i]nventories may be conducted without a warrant or probable cause . . . [b]efore towing the vehicle for violations, safety reasons, or other purposes as defined by law"; 2) an "inventory report shall be completed whenever an officer assumes responsibility for towing a vehicle and shall complete an inventory at the location where the vehicle was seized unless reasons of safety or practicality require the inventory to take place later"; 3) "[b]efore the vehicle is removed, officers shall obtain the signature of the tow truck driver on the inventory report and provide the tow driver a duplicate copy of the report"; 4) the "owner or operator . . . shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment" and if they "cannot be removed, they shall be inventoried before the vehicle is removed, and the owner/operator shall be requested to verify the completeness of the inventory by signature"; 5) the inventory's scope "includes all open and closed containers and compartments and any locked containers or compartments as long as the officer has a key" but "[l]ocked or sealed items shall not be forcibly entered if doing so will damage them"; 6) "[l]ocked items that are not searched will be noted on the Impound report"; 7) "the inventory extends to all areas of the vehicle in which personal property or hazardous materials may reasonably be found"; 8) "trunks or glove compartments shall not be opened by force if a key is unavailable"; 9) evidence of a crime or contraband "discovered during an inventory shall be handled per evidence procedures"; and 10) a "motor vehicle inventory is an administrative procedure designed to protect vehicles and their contents while in departmental custody" and "to protect the owner's property and to protect the department against claims and possible dangers."

As depicted in the foregoing policy, the officers were obligated to ask appellant "to remove, if possible, all valuables from the vehicle prior to impoundment." They did not do so, here. It may be that appellant asked for his phone, car keys, and wallet prior to being detained in the patrol unit and while the officers confirmed the existence of warrants mandating his arrest. But, the officers had yet to confirm those warrants, formally arrest him, and determine whether to impound the vehicle. And, after so determining, no one afforded him opportunity to remove valuables, as required by the policy. Nor did the officers inquire into the existence of any valuables in the car which appellant may have desired.

Other evidence illustrates that the search began with an officer looking around the driver's seat. Then, he opened the center console and found the weapon. Most of his time thereafter was spent attempting to discover the weapon's serial number as he awaited a response to a question posed to dispatch. That question consisted of asking if appellant was a felon. During the interim, the officer did photograph the vehicle's interior. Yet, no effort was made to search its other closed compartments for valuables, e.g., the glove box, or looking in places where valuables could likely be. And, to the extent that effort was made to search the vehicle's trunk, the officer merely opened the compartment, lifted part of an item atop many others, and closed it. No effort was made to search anywhere near the accessible space within the trunk wherein valuables could be located; and again, the same is true of the vehicle's interior. This was so despite departmental policy directing officers to peruse "open and closed containers and compartments and any locked containers or compartments as long as the officer has a key" and extend the

7

inventory "to all areas of the vehicle in which personal property or hazardous materials may reasonably be found."

Nor did the officer compile a written list or inventory of the vehicle's contents. He simply photographed the interior of the car and attached the photos to a "towed vehicle receipt" which the tow operator signed. *See Cox v. State*, No. 05-14-00553-CR, 2015 Tex. App. LEXIS 3217, at *13 (Tex. App.—Dallas Apr. 1, 2015, no pet.) (mem. op., not designated for publication) (finding no valid inventory search in absence of evidence that the policy allowed officer to supplement or replace the required vehicle impoundment form with a video and the record did not reference the video nor was it indicated the video was attached to the completed inventory form). Further, appellant was not offered the chance to peruse or sign the towed vehicle receipt, though policy obligated the officers to ask him to "verify the completeness of the inventory by signature." And, though withholding such opportunity was purportedly the norm, according to an officer, it still deviated from the written policy. More importantly, when pressed on whether it truly was the norm, the officer conceded that it was *his* policy to forego the detainee's signature; whether other officers did so was a matter about which he did not know. So too did he acknowledge the possibility of missing items of value when queried by defense counsel about the effort expended in conducting the search. Indeed, no one testified that the vehicle lacked items of consequential value aside from the firearm.

Simply put, once the firearm was discovered in the console, the remaining search of the vehicle became *pro forma* and cursory. Yet, discovering contraband does not relieve the officer of the obligation to complete an inventory search in compliance with departmental policy. *See Gauldin v. State,* 683 S.W.2d 411, 415 (Tex. Crim. App. 1984)*,*

8

overruled on other grounds by *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998) (holding that the State failed to sustain its burden of proof because Estep himself failed to complete the inventory of the vehicle and was unaware if it was completed by Meddor or by any other officer); *accord*, *Marcopoulos v. State*, 548 S.W.3d 697, 707 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (holding the inventory subject to suppression given the absence of evidence illustrating that the officers actually completed it after discovering contraband). One must remember that the search is warrantless and viewed as an exception to the constitutional requirement for a warrant due to its underlying policy. *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987) (acknowledging inventory searches to be an exception to the Fourth Amendment warrant requirement given its purpose and interests involved). That policy is one of caretaking and involves the creation of an accurate inventory to protect 1) the owner whose property is in custody, 2) the officers from claims of or disputes concerning lost or stolen property, and 3) the officers and others from potential danger. *Fobbs v. State*, No. 07-23-00306-CR, 2024 Tex. App. LEXIS 2982, at *8 (Tex. App.—Amarillo April 30, 2024, pet. ref'd) (mem. op., not designated for publication); *Scott v. State*, No. 03-10-00258-CR, 2011 Tex. App. LEXIS 10239, at *4-5 (Tex. App.—Austin Dec. 30, 2011, pet. dism'd) (mem. op., not designated for publication). Conducting the search in a cursory manner hardly serves the reason for excepting inventory searches from constitutional warrant requirements. It hardly evinces effort to caretake or compile an inventory protecting appellant against lost valuables and the department against claims or dangers.

Nor can we ignore our Court of Criminal Appeals when it said, "an inventory search ***must not deviate*** from police department policy." *Moberg*, 810 S.W.2d at 195 (emphasis

9

added); *see State v. Stauder*, 264 S.W.3d 360, 364 (Tex. App.—Eastland 2008, pet. ref'd) (upholding suppression when the evidence illustrated that the officer failed to complete an inventory form required by written departmental policy). Admittedly, some sister courts approved instances of deviation. *E.g., Peters v. State*, No. 01-15-00130-CR, 2016 Tex. App. LEXIS 2664, at *7-8 (Tex. App.—Houston [1st Dist.] Mar. 15, 2016, pet. ref'd) (mem. op., not designated for publication) (not requiring suppression though the inventory list failed to strictly comply with policy); *Greer v. State*, 436 S.W.3d 1, 8 (Tex. App.—Waco 2014, no pet.) (omitting a bullet and gun from the inventory as required by departmental policy while nonetheless upholding the search). And, the United States Supreme Court in *Florida v. Wells*, 495 U.S. 1 (1990) said such searches need not be conducted in "'totally mechanical "all or nothing" fashion'". *Id.* at 4. Yet, the former, *Peters* and *Greer*, were not opinions from the Court of Criminal Appeals, and our obligation is to abide by its holdings. Additionally, the majority opinion in *Moberg* came after *Wells*; thus, we cannot say the *Wells* implicitly displaced or overruled *Moberg*.[2]

Nevertheless, even if we were to assume "totally mechanical 'all or nothing'" were not the standard and *Moberg* allowed for some deviation from the departmental edict, problem remains. To reiterate, legitimate inventory search relieves the State from first obtaining a warrant due to the policy considerations involved. Forgetting to have the detainee sign the inventory, for instance, may not necessarily undermine the need to

---

[2] We invite the Court of Criminal Appeals to clarify the standard. Is it one of strict or lesser compliance? Is *Moberg*'s "must not deviate" to be applied literally or in a way allowing for non-substantive deviation? And, if the latter, what are the relevant parameters to provide guidance to both the judiciary and law enforcement?

protect that individual from loss or the police from claims or danger. The same is not true of opting to complete the search in a cursory way once contraband is found.

The vehicle remains subject to impoundment. So, there also remains the risk of valuables being within it, going unaccounted for, and, ultimately, being lost or stolen. There also remains the risk of exposing officers and others to easily discoverable dangers which may lurk within the vehicle. Deciding to impound triggers the duty to minimize those risks and foster the purpose underlying the exception to the warrant requirement. Eschewing a reasonably comprehensive or substantive search of closed compartments (like the glove box and car trunk) or readily assessable areas (like under seats) fails to serve that purpose, as required through police procedures here. Such exemplifies substantial, as opposed to nominal, deviation from those departmental requirements and constitutional parameters. Such ultimately likens to a search simply for contraband; that is, once contraband is found, why continue in a substantive manner to comport with departmental procedures. *See Brigham City v. Stuart*, 547 U.S. 398, 405 (2006) (stating that "in the context of programmatic searches conducted without individualized suspicion . . . 'an inquiry into programmatic purpose' is sometimes appropriate" to "ensur[e] that the purpose behind the program is not 'ultimately indistinguishable from the general interest in crime control'"). And, that is the difficulty with approving what occurred here.

Even under a standard mandating less than strict or "totally mechanical" compliance, the officer's effort fell short. Pictures speak louder than words. Those depicted in the video at bar reveal the inception of what may be a substantive inventory search complying with departmental procedure. It ended, though, upon the discovery of contraband in the console. Thereafter, the officer put forth token effort to find valuables,

11

protect appellant against loss, shield the department against claims, minimize danger to fellow officers, and comply with departmental directive.

Much like entering the Hotel California and being unable to leave,[3] we cannot escape the holdings of *Moberg*, *Bertine*, and like authority even though some may wish to. And, because the inventory search at bar substantively deviated from adopted departmental policy, the trial court abused its discretion in denying appellant's motion to suppress evidence garnered from the search; the decision fell outside the zone of reasonable disagreement. That the search uncovered the very contraband underlying appellant's prosecution also prevents us from deeming the error harmless; without evidence of a firearm, the State faced extreme difficulty proving appellant possessed one. Thus, we reverse the judgment and remand the cause to the trial court for further proceedings.

### *Issue Three—Brady*

Via his last issue, appellant argues that the trial court erred in denying his motion for mistrial following the State's late disclosure of *Brady* material.[4] He contends that during trial, the prosecution disclosed to the defense "critical evidence regarding the ownership of the weapon—a trace report." Appellant's counsel moved for a mistrial arguing, "defense has not had the opportunity to sufficiently investigate, depriving Mr. Taylor of due process of law" and an effective defense. We overrule the issue.

---

[3] "You can check out any time you like, but you can never leave." *Hotel California*, by The Eagles.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963) (imposing a constitutional duty upon the State to disclose evidence favorable and material to a defendant's guilt or punishment).

Mistrial is an extraordinary remedy appropriate only for "a narrow class of highly prejudicial and incurable errors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). We review the decision under the standard of abused discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App.1999). Discretion is abused when the ruling falls outside the zone of reasonable disagreement. *Murray v. State*, 172 S.W.3d 782, 784 (Tex. App.—Amarillo 2005, no pet.).

Next, to establish a *Brady* violation, a defendant must satisfy three requirements: 1) the State suppressed evidence; 2) the suppressed evidence is favorable to defendant; and 3) the suppressed evidence is material. *Boyd v. State*, No. 03-17-00353-CR, 2018 Tex. App. LEXIS 1819, at *8 (Tex. App.—Austin Mar. 13, 2018, no pet.) (mem. op., not designated for publication); *see Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). Moreover, "[i]ncorporated into the third prong, materiality, is a requirement that defendant must be prejudiced by the state's failure to disclose the favorable evidence." *Boyd*, 2018 Tex. App. LEXIS 1819, at *8. To establish prejudice, the defendant must show that "'in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure.'" *Id.*

The evidence in question pertained to ownership of the gun. Apparently, it showed that appellant was not in the chain of title, so to speak. Furthermore, the State revealed it to appellant mid-trial, as appellant acknowledged. We note this because where the debate concerns the failure to timely disclose exculpatory evidence, the accused must show that had the evidence been disclosed earlier, there is a reasonable probability that the outcome would have differed. *Hampton v. State*, 86 S.W.3d 603, 615 n. 26 (Tex. Crim. App. 2002). The "mere possibility" that the information would have helped appellant

13

or affected the outcome is not enough, however. *Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011) (discussing materiality and requiring a reasonable probability that the outcome would have differed had the information been disclosed). Appellant urges that he met the relevant standard because 1) appellant said he knew nothing of the gun, 2) finding the true owner would have likely been favorable to the defense, and 3) "ownership of the gun was *the* central issue at trial." (Emphasis added). Yet, "the relevant standard for felon in possession of a firearm is possession, not ownership." *Clay*, 2006 Tex. App. LEXIS 7505, at *8. Assuming the weapon was owned by someone other than appellant, the latter remained subject to conviction for knowingly exercising possession and control over it.

Moreover, the State offered appellant the opportunity to admit the report into evidence and waive any hearsay objection it may have. Had appellant accepted the offer, he would have had fodder to support the notion that the weapon was not his, but he did not. Nor did he accept the trial court's invitation to re-urge the issue via a motion for new trial should the jury enter a verdict of guilty. The post-judgment motion filed said nothing of the alleged *Brady* violation.

Similarly rejected were the opportunities to join the State's request to simply continue the trial for purposes of allowing appellant to investigate the gun's ownership. The State had investigated the chain of title and provided appellant with the names of those who owned it prior to its sale via an internet site. So, the foundation for any ensuing investigation had been laid for appellant. Instead of pursuing that course, appellant desired a mistrial. This is of import because providing a continuance in a setting like that here normally satisfies due process. *Osborne v. State*, No. 04-17-00104-CR, 2018 Tex.

14

App. LEXIS 3252, at *18 (Tex. App.—San Antonio May 9, 2018, no pet.) (mem. op., not designated for publication). Such a delay normally affords the appellant opportunity to develop the evidence or strategies for its use at trial. And, appellant included in his brief no substantive explanation as to why that avenue would have proved deficient.[5]

At best, the circumstances before us show no more than a "mere possibility" that the outcome may have differed had the State revealed the evidence before trial. Thus, appellant's *Brady* complaint remains an unsubstantiated and inadequate basis for a mistrial. More importantly, appellant attacks the failure to grant a mistrial, not the rejection of a *Brady* complaint. Avenues short of mistrial were available, such as a continuance, and those were opportunities appellant eschewed without explaining their inadequacies. Consequently, we cannot say that the decision to deny mistrial fell outside the zone of reasonable disagreement or constituted an instance of abused discretion.

Having overruled issues two and three but sustained issue one, we reverse the trial court's judgment and remand for further proceedings.


Brian Quinn
Chief Justice


Publish.

---

[5] Appellant posits that the trial court denied continuance. He is mistaken. The record disclosed that the trial court questioned whether a "day-and-a-half" of delay would provide appellant a timely, effective course of action. Yet, it did not deny the measure. Rather, it was concerned about whether to grant the only form of relief sought by appellant, that is, mistrial. And, while it may be speculation whether a continuance would have been granted had appellant joined in the State's pursuit for one, we find little to support a conclusion that the trial court would have refused to continue trial had both sides agreed to it. Indeed, returning from such a delay with the announcement that it still provided insufficient time to discover who actually owned the gun could well have added support for a mistrial.