COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-320-CR
  
  
DENNIS LENARD MATHIS                                                       APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM THE 396TH DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION ON APPELLANT’S
PETITION FOR 
DISCRETIONARY REVIEW
 
------------
        Pursuant 
to rule of appellate procedure 50, we have reconsidered our opinion upon 
Appellant’s petition for discretionary review.  See Tex. R. App. P. 50.  We withdraw 
our July 8, 2004 opinion and judgment and substitute the following.
        Appellant 
Dennis Lenard Mathis was indicted for the first-degree felony offense of 
burglary of a habitation and the second-degree felony offense of sexual assault. 
See Tex. Penal Code Ann. § 
30.02(a)(1), (d) (Vernon 2003), § 22.011(a)(1)(A), (f) (Vernon Supp. 2004). 
Appellant was tried by a jury and found guilty on both counts. Punishment was 
assessed at life and twenty years’ confinement, respectively. Appellant raises 
three issues on appeal. We will affirm.
I. Factual and Procedural Background
        At 
trial the State offered evidence that Mary Lewis (a pseudonym) lived in the 
Grayson Square Apartments in Grapevine, Texas on July 19, 2000. That night Lewis 
fell asleep while watching television, and she was awakened by two hands being 
placed over her eyes. The intruder held a cold metal object to her throat and 
wrapped a bandage around her eyes. The intruder sexually assaulted Lewis with 
his finger and his penis. While Lewis never saw the intruder, she stated that 
she recognized that he was African-American by the sound of his voice.
        During 
the ensuing investigation, police retrieved Lewis’s nightgown and pillow, 
which were stained. When the investigating police asked Lewis whether she knew 
of any African-Americans in the apartment complex, she told them that she had 
noticed Appellant on several occasions. Lewis also testified that after the 
incident, she saw Appellant, who lived and worked at her apartment complex, and 
that he seemed to try and avoid her.
        Kim 
Greer, the apartment manager, testified that Appellant had become delinquent on 
his rent and that she had initiated eviction proceedings against him in 
September 2000. The Grapevine police asked Greer to notify them when Appellant 
moved out. In late September 2000, Appellant’s mother notified Greer that she 
was coming to clean out his apartment later that day, that she would be turning 
in his keys, and that he was no longer going to be a resident of the property. 
Appellant’s mother subsequently cleaned out his apartment. Greer later 
informed the police of her belief that the apartment had been vacated or 
abandoned.
        On 
September 26th, the police searched the apartment and seized evidence, including 
a drinking cup with a lip smudge on the rim. Testing revealed that DNA from the 
drinking cup matched the DNA found on Lewis’s nightgown and pillow. Based on 
this information, the police obtained an arrest warrant for Appellant. After 
Appellant was arrested, the police obtained an evidentiary search warrant to 
draw blood from Appellant. In his affidavit for the warrant, Officer James 
Timothy Hall stated under oath that he had reason to believe that there was 
evidence concealed on Appellant “tending to show” that Appellant was guilty 
of aggravated sexual assault. The affidavit further stated that this evidence 
was “[a] representative sample of blood, that being 3 to 7 mls. placed in each 
of two E.D.T.A. tubes, commonly referred to as purple top tubes containing the 
preservative ethylenediaminetetraacetic acid.” After stating the facts leading 
up to the request for the warrant, Officer Hall’s affidavit concluded by 
asking that “a warrant be issued to search for and seize a representative 
sample of blood from [Appellant] by transporting [him] to an appropriate medical 
facility . . . where qualified medical personnel may obtain the blood in 
accordance with accepted medical practices for DNA comparison.”
        Based 
on this affidavit, an evidentiary search warrant was issued. The warrant stated 
that Officer Hall believed “that on the person of [Appellant] there is now 
being concealed certain property, namely a representative sample of blood, that 
being 3 to 7 mls. placed in each of two E.D.T.A. tubes, commonly referred to as 
purple top tubes containing the preservative ethylenediaminetetraacetic acid.” 
The warrant ordered “the requested items” to be “obtained from the body of 
the accused in accordance with accepted medical procedure.” Blood was 
subsequently drawn from Appellant, and testing indicated that DNA collected from 
Appellant’s blood sample matched the DNA from the stain on the victim’s 
nightgown.
        During 
trial, the State asked its DNA expert whether Appellant’s court-appointed DNA 
expert witness had access to the State’s evidence samples and accompanying 
paperwork. Appellant did not object to this questioning. After the State’s 
witness had been passed for cross-examination and a recess was declared, 
Appellant moved for a mistrial on the basis that the defense’s right to confer 
confidentially with its expert witness had been violated when the State 
identified the witness to the jury. The court denied the motion. The jury 
subsequently found Appellant guilty of both charged offenses and assessed his 
punishment at life and twenty years’ confinement.
II. Search of the Apartment
        In 
his first two points, Appellant complains that his rights under article 38.23 of 
the Texas Code of Criminal Procedure, article I, § 9 of the Texas Constitution, 
and the Fourth and Fourteenth Amendments to the United States Constitution were 
violated when the trial court denied his motion to suppress evidence, because 
Appellant had not vacated the apartment when the officers conducted a 
warrantless search of it.
        Appellant 
does not distinguish his rights under the Code of Criminal Procedure, the Texas 
Constitution, and the United States Constitution from one another. In fact, 
Appellant claims that the Fourth Amendment to the United States Constitution 
contains “similar language” to article I, § 9 of the Texas Constitution. 
Therefore, we will address only whether the trial court’s denial of his motion 
to suppress violated his rights under the United States Constitution. See, 
e.g., Dewberry v. State, 4 S.W.3d 735, 743-44 (Tex. Crim. App. 1999) 
(because defendant failed to distinguish his rights under the Texas Constitution 
from those under the federal constitution and combined all four points into one 
argument, Court of Criminal Appeals would address only whether defendant’s 
rights under the United States Constitution were violated), cert. denied, 
529 U.S. 1131 (2000); Hale v. State, Nos. 2-03-143-CR, 2-03-144-CR, 
2-03-145-CR, 2004 WL 1277888, at *2 (Tex. App.—Fort Worth June 9, 2004, no 
pet. h.) (because defendant did not point out any distinction between his rights 
to confrontation under the United States Constitution and the Texas 
Constitution, court would analyze defendant’s contention under the United 
States Constitution only).
A. Suppression Testimony
        On 
September 21, 2001, Appellant filed a motion to suppress several items of 
evidence. Appellant claimed that he had not vacated the apartment when the 
police searched it without a warrant. On July 26, 2002, the court held a hearing 
on the motion. At the hearing, Appellant’s mother testified that when 
Appellant was arrested on an unrelated misdemeanor charge in September 2000, he 
told her to move his belongings out of his apartment. After moving some of his 
possessions, she left a note on the front door of the apartment indicating that 
she wouldn’t be returning for the property left in the apartment. According to 
Appellant’s mother, Appellant did not express any interest in trying to go 
back and live in the apartment.
        Greer, 
the apartment manager, testified that after Appellant indicated he could not pay 
his rent for August 2000, she told him she intended to evict him from the 
apartment. On September 25, a note telling Appellant to vacate the apartment by 
September 28 for non-payment of rent was posted on the apartment door. That same 
day, Appellant’s mother came to the apartment and removed Appellant’s 
belongings. According to Greer, Appellant’s mother stated Appellant was in 
jail and that he wouldn’t be back. Also, a note indicating Greer could take 
possession of the apartment was left in her office by Appellant’s mother. 
Greer never heard from either Appellant or his mother again.
        Police 
Sergeant James Hall testified that following the assault on Lewis, he asked the 
management of the complex to let him know if Appellant ever moved out of his 
apartment and to do so before cleaning the apartment. On September 26th, Greer 
informed him that management had control of the apartment, that it had not been 
cleaned out, and that he could come over. Hall stated he understood the 
apartment had been vacated and was back in the complex’s control. Hall and an 
evidence technician subsequently entered the apartment and collected evidence, 
including a cup from which DNA evidence was taken.
        Patricia 
Bradbury, assistant manager of the apartment complex, testified that she let the 
police into the apartment. According to Bradbury, the apartment was “empty, 
dirty. And there was, I think, a chair in there, but it was vacant. There was 
[sic] no clothes, no food, no couches, no nothing. It was vacant.” Appellant 
testified that after he had been incarcerated in September 2000, he asked his 
mother to go and take some of his things out of his apartment. He stated that he 
and his mother never discussed what to do with the apartment.
        On 
July 29, 2002, the trial court denied appellant’s motion to suppress. On 
August 1st, the court filed findings of fact and conclusions of law. The court 
found, inter alia, the following: (1) Appellant’s mother came to the 
apartment to remove appellant’s belongings and conveyed to management that the 
apartment was being vacated and that Appellant would not be returning; (2) 
Appellant’s mother indicated that the remaining items in the apartment would 
not be retrieved; (3) Appellant’s mother placed the keys to the apartment in 
an envelope and taped the envelope to the door; (4) Greer notified Sergeant Hall 
that the apartment had been vacated and was available for inspection; and (5) 
when Patricia Bradbury entered the apartment, there was no furniture except for 
a recliner chair, and the apartment appeared to Bradbury to have been vacated.
        The 
trial court thus concluded that (1) the actions and statements of Appellant’s 
mother indicated to management that the apartment had been vacated and abandoned 
by Appellant, (2) upon inspection of the apartment by management, it appeared 
that it had been vacated and abandoned by Appellant, (3) management informed the 
Grapevine Police that the apartment had been vacated, (4) based upon this 
belief, police officers entered the apartment with the good-faith belief that 
the apartment had been vacated by Appellant, (5) as a result of the actions of 
Appellant’s mother, Appellant had no expectation of privacy in the remaining 
items in the apartment, and (6) the items seized by the police and the 
subsequent testing results were admissible as evidence at trial.
B. Analysis
        When 
reviewing a trial court’s ruling, an appellate court should give almost total 
deference to the trial court’s determination of historical facts, especially 
when the trial court’s findings are based upon an evaluation of credibility 
and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
A trial court’s decision whether to admit evidence is reviewed for abuse of 
discretion. Osbourn v. State, 92 S.W.3d 531, 537-38 (Tex. Crim. App. 
2002). When an appellate court reviews such a decision, the decision should be 
sustained if it is correct on any theory of the law applicable to the case. Id. 
at 538. This principle holds true even when the trial judge gives the wrong 
reason for his or her decision. Id.
        The 
Fourth Amendment generally prohibits the warrantless entry of a person’s home, 
for purposes of either a search or an arrest. Illinois v. Rodriguez, 497 
U.S. 177, 181, 110 S. Ct. 2793, 2797 (1990). However, this requirement is 
sometimes supplanted if other elements make the unconsented search 
“reasonable.” Id. at 185, 110 S. Ct. at 2799. As the United States 
Supreme Court has stated,
 
[W]hat is generally demanded 
of the many factual determinations that must regularly be made by agents of the 
government— whether the magistrate issuing a warrant, the police officer 
executing a warrant, or the police officer conducting a search or seizure under 
one of the exceptions to the warrant requirement— is not that they always be 
correct, but that they always be reasonable.
  
Id. at 185-86, 110 S. 
Ct. at 2800. This general rule applies to facts bearing upon the authority to 
consent to a search. Id. at 186, 110 S. Ct. at 2800. Thus, a search may 
be reasonable if the person consenting to the search apparently has the 
authority to do so; that is, “determination of consent to enter must be judged 
against an objective standard: would the facts available to the officer at the 
moment . . . warrant a man of reasonable caution in the belief that the 
consenting party had authority over the premises?” Id. at 188, 110 S. 
Ct. at 2801 (citation and internal quotation marks omitted).
        In 
Rodriguez, the Supreme Court adopted the “apparent authority“ 
doctrine, holding that a warrantless entry by law enforcement officers onto a 
person’s premises does not violate the proscription against unreasonable 
searches and seizures under the Fourth Amendment where the entry is based upon 
the consent of a third party whom the officers, at the time of entry, reasonably 
believed to possess common authority over the premises, but who in fact did not 
have such authority. Id., 110 S. Ct. at 2801. When an officer acts in 
good faith in conducting a search based on consent, the evidence may not be 
excluded merely because the officer made a reasonable mistake about the extent 
of the consenting party’s authority. See id. at 184, 110 S. Ct. at 
2799.
        Whether 
the officers acted reasonably is judged by an objective standard, whether the 
facts available to the officer when the consent is given would warrant a person 
of reasonable caution in believing the consenting party had authority over the 
premises. Id. at 188, 110 S. Ct. at 2801. The doctrine does not allow 
officers to proceed without reasonable inquiry in the face of ambiguous 
circumstances or to accept at face value a consenting party’s ambiguous 
assumption of claimed authority to consent to the search. Id. The State 
bears the burden of proving that the person who gave consent had actual or 
apparent authority to do so. Id. at 181, 110 S. Ct. at 2797.
        Appellant 
relies upon McNairy v. State, 835 S.W.2d 101 (Tex. Crim. App. 1991), in 
which a landowner gave police officers consent to search her ten-acre tract 
without mentioning that a rented and occupied mobile home was at the back of the 
property. The court of criminal appeals held that the intermediate appellate 
court erred in concluding that the officers were reasonably justified in 
searching the mobile home based on the apparent authority of the landowner, 
stating “we adhere to the general rule that a landlord cannot normally give 
effective consent to allow a search of a tenant’s premises.” Id. at 
105 (citing Chapman v. U.S., 365 U.S. 610, 81 S. Ct. 776 (1961). 
Appellant also cites Moberg v. State, 810 S.W.2d 190 (Tex. Crim. App. 
1991), in which the court of criminal appeals likewise held that the police had 
no reasonable basis to believe that a motel manager possessed apparent authority 
to search appellant’s room before his rental period had expired or terminated.
        We 
acknowledge that the court of criminal appeals has not expressly adopted the 
apparent authority doctrine. Brimage v. State, 918 S.W.2d 466, (Tex. 
Crim. App. 1994) (stating the “closest this Court has come” to adopting 
doctrine was in McNairy). However, in Brimage, the court provided 
a two-page analysis of the circumstances in which individuals broke into the 
appellant’s house and, as in McNairy and Moberg, simply rejected 
the application of the apparent authority doctrine under the evidence in 
that case. Id. at 480-82.
        Moreover, 
the doctrine has been recognized by numerous intermediate appellate courts in 
this state. See, e.g., Davis v. State, 93 S.W.3d 664, 668 (Tex. 
App.—Texarkana 2003, no pet.) (holding apparent authority of girlfriend 
established based on her presence in house and statements that she lived there); 
Corea v. State, 52 S.W.3d 311, 317 (Tex. App.—Houston [1st 
Dist.] 2001, pet. ref’d) (holding apparent authority of brother-in-law who 
owned residence became ambiguous once police learned no one but appellant lived 
in bedroom and was not established where they failed to investigate further); Riordan 
v. State, 905 S.W.2d 765, 771 (Tex. App.—Austin 1995, no pet.) (holding 
apparent authority not established where officers’ superficial questioning did 
not disclose sufficient information to afford reasonable belief that visiting 
mother-in-law had authority to consent to search). See also Wilson v. State, 
04-02-00805, 2004 WL 624541 at *3 (Tex. App.—San Antonio 2004, no pet.) (not 
designated for publication) (holding apparent authority to consent to search 
vehicle established where appellant asserted it was his and was in possession of 
it at time of search); Giles v. State, No. 08-01-00080, 2003 WL 68178 at 
*4 (Tex. App.—El Paso 2003, no pet.) (not designated for publication) (holding 
State established apparent authority of wife based on statements that she lived 
with appellant in residence and her familiarity with location of items in 
residence); Speir v. State, No. 05-00-01259, 2001 WL 722483 at *4 (Tex. 
App.—Dallas 2001, no pet.) (noting that, while not officially “adopted” in 
Texas, doctrine has been recognized, citing McNairy and courts of appeals 
cases).[1]
        In 
the instant case, the trial court was justified in finding that Sergeant Hall 
received a call from Greer telling him that management had control of the 
apartment. The court was also justified in finding that there was no furniture 
in the apartment except a recliner chair and a mattress without a frame. Thus, 
the court was also justified in finding that when Bradbury, the assistant 
manager, led Sergeant Hall into the apartment, it appeared that the apartment 
had been vacated. Under these circumstances, it was certainly reasonable for 
Hall to believe that the apartment had been vacated or abandoned, so that it was 
under control of management. As such, Sergeant Hall’s belief that management 
had the authority to consent to the search was also reasonable. Thus, the trial 
court did not abuse its discretion in denying Appellant’s motion to suppress. 
Appellant’s first and second points are overruled.
III. Drawing of Appellant’s Blood
        In 
his third and fourth points, Appellant complains that his rights under article 
38.23 of the Texas Code of Criminal Procedure, article I, § 9 of the Texas 
Constitution, and the Fourth and Fourteenth Amendments to the United States 
Constitution were violated when the trial court denied his motion to suppress 
evidence, because the search warrant used as authorization to draw a sample of 
Appellant’s blood did not actually authorize the drawing of Appellant’s 
blood. Again, however, Appellant does not distinguish his rights under the Code 
of Criminal Procedure, the Texas Constitution, and the United States 
Constitution from one another. Therefore, we will address only whether the trial 
court’s denial of his motion to suppress violated his rights under the United 
States Constitution.
A. Suppression Testimony
        In 
his motion to suppress, Appellant also claimed that the search warrant used by 
the police to draw a sample of his blood did not authorize the drawing of his 
blood. During the suppression hearing, Sergeant Hall testified that he obtained 
the evidentiary search warrant in order to “draw blood from [Appellant’s] 
body and have it analyzed for DNA to see if it matched the semen left at the 
scene of the incident . . . .” Hall stated that pursuant to the warrant, he 
and several other officers took Appellant to a medical facility and had blood 
drawn from Appellant. Sergeant Hall explained where the language of the 
affidavit came from:
  
We kind of keep copies of 
other warrants that we’ve written for other cases, and you use some of those 
that you know withstood previous court situations and you kind of go by that.
 
And what I meant by this, kind 
of what it says is that I was wanting to get a sample of blood from the body of 
[Appellant] in the amount of three to seven milliliters that we could place into 
two separate tubes so that we could take those two tubes down to be analyzed for 
DNA purposes.
 
Sergeant Hall was subsequently 
asked by the State, “So although the language is maybe a little confusing, was 
it your intention or what you meant by that was to have the blood drawn and then 
perhaps placed in the tubes after it was drawn?” He replied, “That is what I 
meant, sir, yes.”
        The 
trial court denied Appellant’s motion. In its findings of fact, the court 
found that Sergeant Hall’s affidavit requesting the warrant and the warrant 
itself “were substantially the same in content”; that the search warrant 
“was not grammatically correct as [it] authorized a search of [Appellant’s] 
body for two vials of blood located on his body”; and that as a result of the 
warrant, police obtained samples of Appellant’s blood. The court concluded 
that “[t]he search warrant and the accompanying affidavit, when read together 
in a common sense fashion, demonstrated that the police were seeking to obtain a 
sample of [Appellant’s] blood for testing purposes” and that “[t]he 
objections of [Appellant] to the search warrant are based on a hypertechnical 
reading of the warrant and affidavit.”
B. Analysis
        Several 
of our sister courts have held that description errors in search warrants for 
real property are cured if, despite the erroneous description, the officer who 
executed the warrant actually knew which property to search and searched only 
that property. See, e.g., Taylor v. State, 974 S.W.2d 851, 854-57 (Tex. 
App.—Houston [14th Dist.] 1998, no pet.); Smith v. State, 962 S.W.2d 
178, 181-85 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d); Jones v. 
State, 914 S.W.2d 675, 678-79 (Tex. App.—Amarillo 1996, no pet.); State 
v. James, 848 S.W.2d 258, 261 (Tex. App.—Beaumont 1993, no pet.); 
Mansell v. State, 756 S.W.2d 95, 97-98 (Tex. App.—San Antonio 1988, pet. 
ref’d).
        The 
instant case provides an analogous situation. The affidavit appears to ask for 
authorization to search Appellant for two tubes of blood, and the warrant 
authorizes such a search. However, the affidavit concludes by asking that a 
representative sample of blood be obtained from Appellant “in accordance with 
accepted medical practices for DNA comparison.” Similarly, the warrant 
authorizes the requested items to be “obtained from the body of the accused in 
accordance with accepted medical procedure.” Moreover, it was Sergeant Hall 
who, along with several other officers, took Appellant to a medical facility to 
have his blood withdrawn. All of this cured the description error in the 
warrant. Therefore, we hold that the trial court did not abuse its discretion in 
denying Appellant’s motion to suppress. Appellant’s third and fourth points 
are overruled.
IV. Defense’s DNA Expert
        In 
his final point, Appellant claims that the trial court erred in denying his 
motion for mistrial, based upon the State’s revelation to the jury that the 
defense had the assistance of a DNA expert during the trial.
        At 
trial, the State asked its DNA expert witness, Carolyn Van Winkle, if the 
evidence samples tested and used by the State were available for testing by 
Appellant’s court-appointed forensic DNA expert, Joe Warren. Van Winkle was 
also asked if the accompanying paperwork was provided to Warren. Van Winkle 
testified in the affirmative to both questions. Appellant did not object to this 
questioning, nor did he request a curative instruction from the trial court. 
Instead, Appellant moved for a mistrial after Van Winkle had been passed for 
cross-examination and following a recess. The State argued, in part, that no 
objection had been made at the time of the questioning. The defense stated, 
“Your honor, I sat here and debated objecting to it. It was the old 
skunk-in-the-jury-box situation.” The trial court overruled the motion for 
mistrial.
        In 
order to preserve error for appellate review, the complaining party must make a 
timely and specific request, objection, or motion that the trial court refuses. Tex. R. App. P. 33.1(a). The Court of 
Criminal Appeals recently held that a defendant may preserve error for appeal by 
moving for a mistrial without first making an objection and requesting an 
instruction to disregard. Young v. State, No. 904-02, 2004 WL 1259872, at 
*1, *3-4 (Tex. Crim. App. June 9, 2004). However, such a motion must still be 
timely. Id. at*3-4. To be timely, an objection must be raised at the 
earliest opportunity or as soon as the ground for objection becomes apparent, 
i.e., as soon as the complaining party knows or should know that an error has 
occurred. Penry v. State, 903 S.W.2d 715, 763 (Tex. Crim. App.), cert. 
denied, 516 U.S. 977 (1995); Tell v. State, 908 S.W.2d 535, 544 (Tex. 
App.—Fort Worth 1995, no pet.).
        In 
the instant case, Appellant’s motion for mistrial came after Van Winkle had 
been passed for cross-examination and following a recess. Appellant indicated 
that he had “debated” objecting during the questioning. Thus, Appellant’s 
motion was made after the earliest opportunity and after the ground for 
objection became apparent. As such the motion was not timely, and Appellant did 
not preserve error for appeal. Penry, 903 S.W.2d at 763. Appellant’s 
fifth point is overruled.
V. Conclusion
        Having 
overruled all of Appellant's points, we affirm the trial court's judgment.
   
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
    
  
PANEL A:   CAYCE, 
C.J.; GARDNER and MCCOY, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: September 7, 2004


NOTES
1.  See 
Tex. R. App. P. 47.7 (providing 
that unpublished cases may be cited, although they have no precedential value).