

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-09-00385-CR

THE STATE OF TEXAS                                                        APPELLANT

V.

CORY RAY MOLDER                                                        APPELLEE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

------------

In four related points, the State appeals the trial court's order granting appellee Cory Ray Molder's motion to suppress evidence that the police found in his truck. The State contends that officers found the evidence during a legal inventory. We affirm.

### Background Facts

One morning in June 2009, Texas Department of Public Safety (DPS) Trooper Earl ("Dub") Gillum Jr. stopped at a gas station to wash his windshield.

While Trooper Gillum was there, Denisa Rudnicky, a clerk from the station, walked outside, began talking to Trooper Gillum, and received a call on her cell phone from appellee. Trooper Gillum heard appellee scream to Rudnicky that he was going to "f--- [her] up" and "ram [her] vehicle." Trooper Gillum put the phone to his ear and said, "This is Trooper Dub Gillum with the highway patrol." Appellee hung up.

Trooper Gillum traced the call to a Granbury motel, and he called appellee's room. Trooper Gillum told appellee that he had heard the threats appellee had made, and Trooper Gillum said that he was going to come to the motel to talk to appellee. Appellee said that he would leave the motel. Trooper Gillum called dispatch, and two Granbury Police Department officers went to the motel to ensure that appellee did not leave.

When Trooper Gillum arrived at the motel, appellee was outside in a parking lot between the motel and another building that contained Song Hays Chinese Restaurant. An officer gave appellee's keys to Trooper Gillum. Appellee was shirtless and handcuffed. His eyes were dilated and moving rapidly as if he was "high on some type of drug." Trooper Gillum told appellee that he was under arrest for assault by threat. Appellee expressed concern about the motel owner's throwing his possessions away, but Trooper Gillum told appellee that would not happen. One of the officers took appellee to jail.

Trooper Gillum decided to take an inventory of appellee's truck—which was parked and locked in a private lot near the motel but closer to Song Hays—

2

and then have a wrecker transport the truck to an impound lot. Two other troopers brought Trooper Gillum an HQ-109 inventory form, which must be completed as part of DPS's policy, and helped Trooper Gillum inventory the truck.

During the inventory, Trooper Gillum found a blue cloth bag that had a rope around it and smelled like marijuana. He opened the bag and saw a cigarette box. Inside the box, he discovered three clear plastic baggies containing a crystal white substance that he believed to be methamphetamine. Also inside the blue cloth bag, Trooper Gillum found another baggie with two prescription pills, $166, an electronic gram scale, a glass pipe that could be used to smoke methamphetamine, a metal pipe that contained marijuana residue, a gas lighter, and approximately thirty empty plastic baggies.[1]

A Hood County grand jury indicted appellee for possession of methamphetamine and possession of methamphetamine with intent to deliver.[2] Appellee filed a motion to suppress the evidence found in his truck, arguing that officers had violated his constitutional and statutory rights by searching the truck without a warrant or probable cause. He relied on the United States Supreme

---

[1]The inventory form also shows that the truck contained valuable items unassociated with drug use. Officers found an air tank, two chairs, two hammers, and a cooler in the truck's bed. They found "ammo" in a toolbox. They also found a wallet inside the truck.

[2]*See* Tex. Health & Safety Code Ann. §§ 481.102(6), .112(a), .115(a) (Vernon 2010).

Court's decision in *Arizona v. Gant*.[3]  The trial court held a hearing, at which the State called Trooper Gillum in an attempt to prove that he had found the evidence while conducting a lawful inventory.  The trial court granted appellee's motion, and the State filed notice of this appeal.[4]

## The Suppression of the Evidence

In four points, the State argues that the trial court erred by granting appellee's motion to suppress.  Specifically, the State contends that the court erred by finding that (1) Trooper Gillum did not conduct the inventory under DPS's general policy, (2) the impoundment of appellee's truck was unreasonable and therefore illegal under federal and state law, and (3) *Gant* affects the legality of inventories.

### Standard of review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the

---

[3]129 S. Ct. 1710, 1723 (2009).

[4]*See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2010).

4

weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold

5

the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) ("Our task . . . is to determine whether the trial court could have reasonably denied appellant's motion to suppress given the record evidence and given the applicable federal and state law."), *cert. denied*, 541 U.S. 974 (2004).

**The legality of Trooper Gillum's inventory**

The United States and Texas constitutions protect against unreasonable searches by government officials. U.S. Const. amend. IV; Tex. Const. art. I, § 9. Once a defendant shows that a search occurred without a warrant, the burden shifts to the State to prove that the search was reasonable under the totality of the circumstances. *Amador*, 221 S.W.3d at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Trooper Gillum found the items in appellee's truck without a warrant.

Thirty-five years ago, the Supreme Court recognized that in some circumstances, the police's standardized, routine inventory of a vehicle may be reasonable and valid. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100 (1976). Eleven years later, the Supreme Court repeated that holding. *Colorado v. Bertine*, 479 U.S. 367, 369, 107 S. Ct. 738, 739–40 (1987); *see also Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S. Ct. 2605, 2608 (1983)

6

(explaining that the absence of a warrant in an inventory is immaterial to the inventory's reasonableness).

In *Opperman*, the Vermillion, South Dakota police had towed a car to an impound lot because it was unoccupied and illegally parked. 428 U.S. at 365–66, 96 S. Ct. at 3095. At the lot, an officer, using a standardized form, inventoried the contents of the car, which included looking in an unlocked glove compartment, and found marijuana. *Id.* at 366, 96 S. Ct. at 3095. After Opperman came to the lot to claim his property, the police charged him with possessing marijuana, and he filed a motion to suppress the evidence found during the inventory. *Id.* at 366, 96 S. Ct. at 3095–96. The trial court denied his motion, and a jury convicted him, but the South Dakota Supreme Court reversed the conviction, holding that the marijuana had been obtained in violation of the Fourth Amendment. *Id.* at 366–67, 96 S. Ct. at 3095–96. In reversing the South Dakota court, the United States Supreme Court stated in part,

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody . . . ; the protection [of] the police against claims or disputes over lost or stolen property . . . ; and the protection of the police from potential danger . . . . The practice has been viewed as essential to respond to incidents of theft or vandalism. . . .
>
> . . . .
>
> The Vermillion police were indisputably engaged in a caretaking search of a lawfully impounded automobile. The inventory was conducted only after the car had been impounded

7

for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. . . .

On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not "unreasonable" under the Fourth Amendment.

*Id.* at 368–76, 96 S. Ct. at 3097–3100 (citations and footnotes omitted).

Similarly, in *Bertine*,

a police officer in Boulder, Colorado, arrested [Bertine] for driving while under the influence of alcohol. After Bertine was taken into custody and before the arrival of a tow truck to take Bertine's van to an impoundment lot, a backup officer inventoried the contents of the van. The officer opened a closed backpack in which he found controlled substances, cocaine paraphernalia, and a large amount of cash. . . .

The backup officer inventoried the van in accordance with local police procedures, which require a detailed inspection and inventory of impounded vehicles. He found the backpack directly behind the frontseat of the van. Inside the pack, the officer observed a nylon bag containing metal canisters. Opening the canisters, the officer discovered that they contained cocaine, methaqualone tablets, cocaine paraphernalia, and $700 in cash. In an outside zippered pouch of the backpack, he also found $210 in cash in a sealed envelope. After completing the inventory of the van, the officer had the van towed to an impound lot and brought the backpack, money, and contraband to the police station.

After Bertine was charged with [various offenses], he moved to suppress the evidence found during the inventory search on the ground, *inter alia*, that the search of the closed backpack and containers exceeded the permissible scope of such a search under the Fourth Amendment.[5]

---

[5]In the Supreme Court's opinion, it noted that the Colorado trial court had found that the "standard procedures for impounding vehicles mandated a

479 U.S. at 368–69, 107 S. Ct. at 739–40. The Supreme Court held that the inventory was lawful, reasoning,

> [I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment. The policies behind the warrant requirement are not implicated in an inventory search, . . . nor is the related concept of probable cause . . . .
>
> . . . .
>
> In the present case, as in *Opperman* and *Lafayette*, there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in *Opperman* and *Lafayette* are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. . . .
>
> . . . .
>
> . . . We conclude that . . . reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment . . . .

*Id.* at 371–74, 107 S. Ct. at 741–42 (citations and footnotes omitted); *see also Jurdi v. State*, 980 S.W.2d 904, 906, 908 (Tex. App.—Fort Worth 1998, pet. ref'd) (relying on *Bertine* to overrule a defendant's challenge to the denial of his motion to suppress evidence found during an inventory of a car); *Starlling v. State*, 743 S.W.2d 767, 772 (Tex. App.—Fort Worth 1988, pet. ref'd) (citing *Opperman* to hold that evidence obtained during an inventory was admissible).

---

'detailed inventory *involving the opening of containers and the listing of [their] contents*.'" *Bertine*, 479 U.S. at 370, 107 S. Ct. at 740 (emphasis added).

The trial court recognized the existence of the inventory exception to the warrant requirement but held that it is not applicable to this case. To support that decision, the court concluded that Trooper Gillum's inventory was not authorized because, in sum,

- it was not conducted according to DPS's general policy because DPS did not have possession of the truck or an obligation to protect it or its contents;

- it was not reasonable under federal and state law because the truck was not in DPS's possession, it was not creating a traffic hazard, it was parked and locked, and there were reasonable alternatives to impoundment because (1) appellee's confinement was expected to be short, and the truck would have been protected by leaving it parked and locked; and (2) appellee's family was at the arrest site;[6] and

- *Gant* affects the validity of an inventory that would otherwise be authorized by *Bertine*.

The State's four points essentially attack these conclusions. We need not address any of these reasons for suppression, however, because we conclude that the trial court's decision must be affirmed on a different, more specific legal basis. *See Armendariz*, 123 S.W.3d at 404.

In appellee's brief, he argues,

> It is noteworthy that [Trooper] Gillum had to pass through two closed containers during his inventory search before he arrived at several clear baggies of meth. The first closed container was a blue bag with a white rope around it. The second container was a cigarette box. There was no testimony developed by the State as to what the standard criteria was for the search policy regarding containers, and closed containers. Part of the reasonableness of an

---

[6]However, according to Trooper Gillum, appellee's father arrived *after* the inventory occurred while the "wrecker was . . . hooking up to the truck."

10

inventory search derives from its standard and clearly defined manner.

After it decided *Opperman* and *Bertine*, the Supreme Court readdressed inventories in *Florida v. Wells*. 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990). In *Wells*,

> A Florida Highway Patrol trooper stopped respondent Wells for speeding. After smelling alcohol on Wells' breath, the trooper arrested Wells for driving under the influence. Wells then agreed to accompany the trooper to the station to take a breathalyzer test. The trooper informed Wells that the car would be impounded and obtained Wells' permission to open the trunk. At the impoundment facility, an inventory search of the car turned up two marijuana cigarette butts in an ashtray and a locked suitcase in the trunk. Under the trooper's direction, employees of the facility forced open the suitcase and discovered a garbage bag containing a considerable amount of marijuana.

> Wells was charged with possession of a controlled substance. His motion to suppress the marijuana on the ground that it was seized in violation of the Fourth Amendment to the United States Constitution was denied by the trial court. . . . On appeal, the Florida District Court of Appeal . . . held . . . that the trial court erred in denying suppression of the marijuana found in the suitcase. Over a dissent, the Supreme Court of Florida affirmed.

*Id.* at 2–3, 110 S. Ct. at 1634. The United States Supreme Court affirmed the suppression of the marijuana that was found in the closed suitcase, reasoning,

> Our view that standardized criteria . . . or established routine . . . must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime[.]"

11

. . . .

> *In the present case, the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search.  We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida.*

*Id.* at 4–5, 110 S. Ct. at 1635 (citations omitted and emphasis added). Thus, opening closed containers while conducting an inventory is lawful only when there is evidence of a policy or established procedure that allows for such. *See id.*; *Rothenberg v. State*, 176 S.W.3d 53, 57 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("[T]he Fourth Amendment . . . allows police to open closed—even locked—containers as part of the inventory of an automobile, as long as they do so in accordance with standardized police procedures"); *Richards v. State*, 150 S.W.3d 762, 771 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc) (stating that either "standardized criteria or established routine must regulate the opening of closed containers during an inventory search" and upholding a search because an officer testified that he was trained to inventory any container he had access to); *see also United States v. Salmon*, 944 F.2d 1106, 1121 (3d Cir. 1991) (citing *Wells* and holding that based on "the lack of evidence of any criteria or established routine regarding the scope of an inventory search, we conclude that the searching officers had impermissible discretion regarding the . . . treatment of closed containers"), *cert. denied*, 502 U.S. 1110 (1992); *cf. Perry v. State*, 933 S.W.2d 249, 252–53 (Tex. App.—

12

Corpus Christi 1996, pet. ref'd) (distinguishing the holding in *Wells* and holding that an inventory of an ashtray was permissible because it was not a closed container); *1975 Chevrolet v. State*, 801 S.W.2d 565, 566–67 (Tex. App.—Dallas 1990, writ denied) (upholding the inventory of a closed container because the police department's policy was to open locked containers if the police had access to the keys of the container).

The burden is on the State to show a lawful inventory. *State v. Giles*, 867 S.W.2d 105, 108 (Tex. App.—El Paso 1993, pet. ref'd). Here, the State did not provide the trial court with a written inventory policy.[7] Instead, the sole evidence of DPS's inventory policy came from testimony by Trooper Gillum when the State asked him the following questions:

> Q . . . Let me ask you, does the Department of Public Safety have prescribed procedures for an arrest and when there's a vehicle involved and . . . people's property?
>
> A Yes, ma'am. It's our policy that the arresting officer take control and secure that property in the safest way possible.
>
> Q Okay.
>
> A That property is now my responsibility as the arresting officer, so I have to take care of that property and do it through policy with an inventory and a written inventory and witnesses and filing of that inventory.

---

[7]The trial court admitted DPS's property inventory form, which contained the results of the particular inventory in this case but did not contain any statement about DPS's policy. The general legality of an inventory is not contingent on whether the inventory policy is written. *See United States v. Skillern*, 947 F.2d 1268, 1275 (5th Cir. 1991), *cert. denied*, 503 U.S. 949 (1992); *Richards*, 150 S.W.3d at 771.

13

. . . .

Q  Did you feel safe in leaving his vehicle there?

A  No, ma'am, I didn't.  I didn't know what was in the vehicle, so I inventoried it and then called the wrecker to store it in a safe, secure place.[8]

Trooper Gillum's concise testimony establishes that DPS has a general policy to inventory vehicles associated with defendants' arrests, but the testimony relates nothing about the scope of the policy or how it affects closed containers such as appellee's roped blue bag.  DPS's actual inventory policy may require opening all containers or some containers under specific circumstances, but those details were not proved in this case.

We recognize that courts have held that an officer does not need to specifically mention "closed containers" to establish a policy regarding them. *See, e.g., United States v. Mundy*, 621 F.3d 283, 290–93 (3d Cir. 2010) (explaining that "[s]tandardized criteria or routine may adequately regulate the opening of closed containers discovered during inventory searches without using the words 'closed container' or other equivalent terms" and holding that a policy had sufficiently described the scope of an inventory to allow the opening of a shoebox).  But we hold that in this case, Trooper Hall's testimony, as the sole evidence at the suppression hearing, was too barren to show any particular

_____

[8]Trooper Hall also testified about some exceptions to requiring an inventory, but he did not give details about DPS's procedures when those exceptions do not apply and an inventory therefore proceeds.

14

standardized criteria or routine concerning the scope of the inventory; the testimony is therefore insufficient for us to infer the extent of DPS's policy regarding closed containers.  Also, we conclude that we cannot infer DPS's policy to open closed containers from the mere fact that Trooper Hall did so; such an inference would eviscerate the requirement described in *Wells*.

Because the evidence at issue was found within a closed container, and the State did not meet its burden to show the legality of the inventory of that container, we hold that the trial court did not err by granting appellee's motion to suppress, and we overrule all of the State's points that contest, on other grounds, the trial court's suppression decision.  *See Wells*, 495 U.S. at 4–5, 110 S. Ct. at 1635; *Armendariz*, 123 S.W.3d at 404.

## Conclusion

Having overruled all of the State's points, we affirm the trial court's order granting appellee's motion to suppress.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

MEIER, J. filed a concurring opinion.

PUBLISH

DELIVERED:  February 24, 2011

15



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-09-00385-CR

THE STATE OF TEXAS                                                   APPELLANT

V.

CORY RAY MOLDER                                                          STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## CONCURRING OPINION

----------

I concur in the result reached by the majority opinion, but I write separately to voice my belief that the trial court's ruling to suppress the evidence found during the inventory of Molder's truck was correct for the additional reason that the truck should not have been impounded in the first place. The majority holds that because the State did not offer evidence of any particular standardized criteria concerning the scope of inventory searches that would lead to a conclusion regarding DPS's policy as to opening closed containers, the State

failed to meet its burden to show the legality of the inventory of a closed container found in Molder's vehicle. I join in the majority's analysis and ruling concerning closed containers under the facts of this case.

I write separately, however, to express my view and opinion that regardless of what DPS's policy is toward closed containers, an inventory of Molder's vehicle should have never occurred. And that is what the trial court specifically found.

An inventory search is permissible under the federal and state constitutions if it is conducted pursuant to a lawful impoundment. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980). For an impoundment to be lawful, the seizure of the vehicle must be reasonable under the Fourth Amendment. *Benavides*, 600 S.W.2d at 811. Courts have identified a number of circumstances in which law enforcement may reasonably impound an automobile; principal among these circumstances is whether there is some reasonable connection between the arrest and the vehicle. *Id*.; *Delgado v. State*, 718 S.W.2d 718, 721 (Tex. Crim. App. 1986); *Daniels v. State*, 600 S.W.2d 813, 815 (Tex. Crim. App. [Panel Op.] 1980). But to be sure, an inventory cannot simply be a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990).

According to the trial court's findings of facts, Molder's truck was parked and locked approximately 175 feet from Molder's hotel room in front of a nearby

2

business—as the trial court phrased it, "a private parking lot and not the street." Molder's truck faced the street, but otherwise was not impeding the flow of traffic nor was it a danger to public safety. The trial court found that the distance between where Molder was detained and eventually arrested was approximately 100 feet from his truck. The trial court further found that there was no reasonable connection between the arrest and Molder's truck; that Molder had not consented to the search of his truck; that the truck was not blocking traffic; that no exigent circumstances existed to authorize the search of Molder's truck; and that there was "no likely evidence of 'assault by threat' to be found" in the truck and that there was no evidence that "Molder's truck had been used in the commission of this or any other crimes." Furthermore, the trial court determined that Molder "was not in the proximity of his truck such that he could gain access to the passenger compartment." Regarding its legal determination of whether a valid inventory of Molder's truck occurred, the trial court specifically concluded that as a matter of law Molder's truck "never validly came into the possession or responsibility of the DPS and therefore should not have been impounded."

This conclusion by the trial court regarding the impoundment and inventory of Molder's truck is supported by the court of criminal appeals's decision in *Benavides*. 600 S.W.2d at 810. In *Benavides,* the police discovered the defendant and his wife in their home; both had been shot, and the defendant's wife was dead. *Id*. The police discovered the type of car the defendant drove and began looking for it. The car was found locked and legally parked about two

3

blocks away from where the defendant and his wife were found. The police impounded the car for "protective custody" and "safekeeping." Before towing the car, the police inventoried its contents and discovered a suicide note incriminating the defendant. *Id.* at 810–11.

The court of criminal appeals held the car was unlawfully impounded because (1) there was no evidence that the car was impeding the flow of traffic or a danger to public safety; (2) the vehicle was legally parked in a residential area and locked; (3) while the appellant may not have been able to retrieve the car, there may have been someone else who could have done so for him, and (4) there was no reasonable connection between the arrest and the vehicle. *Id.* at 812. In so holding, the court stated, "The mere arrest of a defendant cannot be construed to authorize the seizure of his automobile when the arrest took place two or more blocks away from the automobile." *Id.*[1]

This case is similar to *Benavides*. Molder was detained and arrested approximately 100 feet from his truck. His truck was legally parked. The trial court specifically found that there was no evidence Molder's truck was impeding the flow of traffic. The trial court, which listened to the arresting officer's testimony and reviewed the photographs depicting where Molder was in

---

[1]The rule in *Benavides* that the mere arrest of a defendant cannot be construed to authorize the search of his automobile has been expanded by some courts to encompass those situations where there is a reasonable connection between the crime of arrest and the vehicle. *Lagaite v. State,* 995 S.W.2d 860, 865 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). The trial court in this case specifically found there was no reasonable connection between the crime for which Molder was arrested and his truck.

4

relationship to his truck when he was arrested, found that there was no reasonable connection between Molder's arrest and his truck. I conclude that there is no reasonable distinction that the distance in *Benavides* was two blocks and in this case approximately 100 feet. The gravamen of *Benavides*, like in this case, is that the defendant's mere arrest does not automatically give the State the authority to conduct an inventory. *Id*. I would hold that the mere arrest of Molder did not authorize the seizure of his truck and that, given the record evidence and the applicable federal and state law, the trial court could have reasonably granted Molder's motion to suppress upon this additional ground. *See Armendariz v. State,* 123 S.W.3d 401, 403 (Tex. Crim. App. 2003) (We must "uphold the trial court's ruling on appellant's motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case."), *cert. denied*, 541 U.S. 974 (2004). Because I would affirm the trial court's judgment granting the motion to suppress on this basis, I concur with the majority's opinion.

BILL MEIER
JUSTICE

PUBLISH

DELIVERED: February 24, 2011

5