In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-16-00003-CR

**WILLIAM DALE PERKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR32009**

**MEMORANDUM OPINION**

A grand jury indicted William Dale Perkins (Perkins or Appellant) for possession of methamphetamine, a controlled substance, in an amount of four grams or more but less than 200 grams, with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(d) (West 2010).[1] The indictment included enhancements for two prior felony convictions. Perkins filed a pretrial Motion to

_____

[1] The indictment charged Perkins as a habitual offender under section 12.42 of the Texas Penal Code, but the State later abandoned the habitual enhancement count as part of its plea agreement with Perkins.

Suppress, asking the court to suppress the evidence obtained pursuant to a warrantless search of his vehicle. The trial court denied the motion to suppress without issuing findings of fact and conclusions of law. Thereafter, Perkins pleaded guilty to the charge of possession of a controlled substance and pleaded true to the enhancements. The court sentenced Perkins to twenty years' confinement and certified his right to appeal the pretrial ruling. In a single issue, Perkins appeals the trial court's denial of his motion to suppress. We affirm.

PRETRIAL HEARING

In his Motion to Suppress, Perkins argued that there was no established vehicle inventory policy or that the officer who performed the search of Perkins's vehicle did not properly follow a vehicle inventory policy. At the hearing, the State stipulated that the search of Perkins's vehicle was not pursuant to a warrant.

Officer Michael Leffew (Officer Leffew or Leffew), a police officer for the Daisetta Police Department, testified at the pretrial hearing that, while on duty on the night of January 30, 2015, he stopped a pickup truck pulling a four-wheeler on a trailer because the trailer had no lights. At the hearing, Officer Leffew identified Perkins as the only occupant of the vehicle that night. Leffew testified that, as Perkins braked to come to a stop, Leffew noticed the vehicle did not have a left brake light. Leffew also explained that the license plate on the trailer and the

2

inspection and registration on the pickup truck were expired. According to Leffew, Perkins produced a Texas ID card and told the officer he did not have proof of financial responsibility. Leffew further explained that, with the help of the Liberty County Sheriff's department, he determined that Perkins's Texas ID card was invalid and that, although Perkins had a driver's license, it was invalid. Officer Leffew testified that he arrested Perkins for driving with a suspended license and for not having proof of financial responsibility.

According to Officer Leffew, Perkins pulled off the road into a private driveway between two houses, neither house was Perkins's, and Perkins's vehicle did not allow other vehicles to freely come and go[.]" Leffew explained that, in accordance with his training, he decided to have the vehicle impounded because of the expired registration and lack of insurance. Leffew testified that there was a procedure in place regarding towed vehicles that he was expected to follow and that it required him to "document and secure the vehicle, [and] inventory everything in it[,]" although on cross-examination Leffew agreed that it was within his discretion whether to impound a vehicle. Officer Leffew explained that police department procedures required him to open any closed container found in a vehicle and document its contents, but on cross-examination Leffew agreed he had discretion as to what to include on the inventory form. Leffew testified that he

found a closed container in Perkins's vehicle that night that contained coins, knives, and various drugs, including methamphetamine. The State offered and the court admitted Exhibits 1 through 4, which Leffew testified were photographs of a bag he found in Perkins's vehicle.

Officer Leffew was questioned specifically about the Daisetta Police Department's procedure for inventorying a vehicle:

[State's attorney]: Now, are there any procedures in place that you're expected to follow whenever you tow a vehicle like that?

[Leffew]: Yes, sir, both to secure the vehicle, document any valuable items in it on an inventory sheet so we can make sure we get it back to the guy or girl that comes and gets it once it's released back to them.

[State's attorney]: Now, how do you know that's procedure and what's expected of you?

[Leffew]: That's how we were trained at the time with the boss we had.

[State's attorney]: Is that policy still in place?

[Leffew]: They have put in a new policy. It's more defined than it was before, yes, sir.

[State's attorney]: So, were these policies and procedures with relation to securing the vehicle and inventorying it, were they ever written?

[Leffew]: Yes.

[State's attorney]: And what did they require at that point?

4

[Leffew]: They require that you document and secure the vehicle, inventory everything in it.

[State's attorney]: Now, were there any other procedures written or unwritten that were required of you when inventorying a vehicle?

[Leffew]: Just make sure we document it and secure it.

[State's attorney]: Did y'all have any procedures or requirements as they pertain to closed containers in vehicles?

[Leffew]: Not at that time, no, we didn't.

[State's attorney]: What were you expected to do if you found a closed container?

[Leffew]: We're supposed to document it and make sure it didn't have valuables in it and if it did document them. If not document it's empty or whatever it is.

[State's attorney]: How can you ascertain whether there are valuables in a closed container unless you open it?

[Leffew]: You can't.

[State's attorney]: So, does that mean that you were expected to open closed containers?

[Leffew]: Yes, sir.

[State's attorney]: And how long -- have you done that on more than one occasion?

[Leffew]: Oh, yes, sir.

[State's attorney]: How long have you been doing that?

[Leffew]: At that point four years.

5

[State's attorney]: Do you know -- have you ever assisted [Officer] Terry Cosgrove on similar stops where inventories were taken of vehicles?

[Leffew]: Yes. Her, Chief [], deputies in the county, everybody.

[State's attorney]: Is that how all those folks do the same thing?

[Leffew]: Yes. I have helped on many of them, yes, sir.

[State's attorney]: Do they open closed containers as well?

[Leffew]: Yes, sir.

Officer Leffew agreed he completed an inventory form for the items found in Perkins's vehicle but he also listed some of the items on his incident report because there were too many items for him to complete the inventory "on the side of the road." Leffew explained that he put the knives and coins that were in closed containers into evidence "[b]ecause it was evidence. It didn't belong to me. It belonged to him." Perkins offered Exhibit M1 into evidence, which was a copy of the inventory form Leffew filled out. According to Leffew, he secured the container found in Perkins's vehicle in the patrol bag in his police vehicle and put the items into evidence with the Daisetta Police Department.

After examination and cross-examination, the trial court directly questioned Leffew, and Leffew testified that the written policy in effect on the night of the incident provided that he should inventory any and all items in the vehicle and that

6

the policy gave him the authority to open a closed container found in the vehicle. The defense offered Exhibit M2, a written "Arrest Procedures" policy of the Daisetta Police Department, with an issuance date of "04/22/2009[.]" A section of this policy titled "Officer Actions Incidental to Arrest[]" lists the following tasks an officer should complete upon arresting a suspect:

1. Frisk the suspect for any potential weapons, evidence, or extraneous that could potentially aid in escape;
2. Provide or request any medical first aid;
3. Secure, bag, and tag and actual or potential evidence;
4. Make arrangements for the security of the suspect's motor vehicle, if any;
5. Transport suspect in an authorized emergency vehicle to the hospital, jail, investigative office, or other secure facility; and
6. Complete all required report incidental to the arrest.

Leffew explained that he understood this policy provided that he should "secure everything in the vehicle[,]" including opening containers therein. Leffew agreed that Exhibit M2 contained the written policies and procedures on the night of the incident.

ISSUE ON APPEAL

In a single issue, Appellant argues the trial court erred in denying his motion to suppress because "the inventory exception to the warrant requirement does not apply where no established written policy defines the proper scope of the inventory procedure and allows the officer full discretion." Appellant argues that the Daisetta

7

Police Department did not have an impoundment policy and that it was left completely to Leffew's discretion whether to impound Perkins's vehicle. Appellant also argues that the State did not meet its burden to prove that the Daisetta Police Department had an inventory policy and that Officer Leffew followed that policy. Appellant further argues that the purpose of the inventory search performed on Perkins's vehicle was to gather evidence and that "Officer Leffew's actions amount to 'general rummaging' in order to discover incriminating evidence expressly prohibited by *Florida v. Wells*[.]" Appellant's brief also notes that the inventory form that was completed "contains no indication of any case removed from the vehicle of Appellant from which the evidence at issue herein was inventoried."

STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* When, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App.

8

2000). When the trial court does not issue findings of fact, findings that support the trial court's ruling are implied if the evidence, viewed in a light most favorable to the ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). Almost total deference is given to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855-56; *see also Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013).

INVENTORY SEARCH

The Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I § 9. A warrantless search of property is presumptively unreasonable subject to a few specifically defined and well-established exceptions. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim.

9

App. 2003). One exception to the requirement of a warrant is an inventory search. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Jackson v. State*, 468 S.W.3d 189, 194-95 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980)). An inventory search protects (1) the owner's property while the vehicle is in police custody, (2) the police against claims or disputes over lost, stolen, or vandalized property, and (3) the police from possible danger. *Bertine*, 479 U.S. at 372. Issues of probable cause do not apply to an inventory search because an inventory is not conducted to investigate criminal activity but instead to fulfill administrative purposes. *See id.* at 371-72 (quoting *Opperman*, 428 U.S. at 370 n.5) (explaining that the inventory-search exception centers "upon the reasonableness of routine administrative caretaking functions[]"); *see also State v. Cruz*, 461 S.W.3d 531, 542 (Tex. Crim. App. 2015) (noting that the inventory search exception is based on administrative concerns) (citing to *Bertine*, 479 U.S. at 371); *Jackson*, 468 S.W.3d at 195.

To satisfy the inventory search exception, the inventory must be conducted in good faith and pursuant to a reasonable standardized police procedure. *Moskey*, 333 S.W.3d at 700 (citing *Bertine*, 479 U.S. at 374). The policy or practice

10

governing the inventory search should be designed to produce an inventory, and a search may not be used as a "'ruse for a general rummaging in order to discover incriminating evidence.'" *Id*. (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). The State bears the burden to establish that the police conducted a lawful inventory search. *Id.* (citing *Gauldin v. State*, 683 S.W.2d 411, 415 (Tex. Crim. App. 1984), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991)); *Evers v. State*, 576 S.W.2d 46, 50 & n.5 (Tex. Crim. App. 1978)). The State meets its burden by demonstrating an inventory policy exists and the officers followed the policy. *Id.* (citing *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991)). To be lawful, an inventory search must not deviate from police policy. *See Roberts v. State*, 444 S.W.3d 770, 778 (Tex. App.—Fort Worth 2014, pet. ref'd), *cert. denied by* 136 S. Ct. 119 (2015) (citing *Moberg*, 810 S.W.2d at 195; *State v. Molder*, 337 S.W.3d 403, 406 (Tex. App.—Fort Worth 2011, no pet.)); *Josey v. State*, 981 S.W.2d 831, 843 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). The general legality of an inventory search is not contingent upon whether the inventory policy is written. *Molder*, 337 S.W.3d at 410 n.7 (citing *United States v. Skillern*, 947 F.2d 1268, 1275 (5th Cir. 1991); *Richards v. State*, 150 S.W.3d 762, 771 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)). An inventory search is not rendered unlawful because it is conducted prior to actual

11

impoundment. *See Daniels v. State*, 600 S.W.2d 813, 815 (Tex. Crim. App. 1980). Opening closed containers while conducting an inventory search is lawful when there is evidence of a policy or established procedure that allows for such. *Molder*, 337 S.W.3d at 409 (citing *Wells*, 495 U.S. at 4-5; *Rothenberg v. State*, 176 S.W.3d 53, 57 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); and *Richards*, 150 S.W.3d at 771)). An inventory search may be reasonable even though the inventory does not list every item found in the vehicle. *See Uballe v. State*, 439 S.W.3d 380, 385 (Tex. App.—Amarillo, 2014, pet. ref'd); *St. Clair v. State*, 338 S.W.3d 722, 724-25 (Tex. App.—Amarillo, 2011, no pet.).

Citing to *Autran v. State*, 887 S.W.2d 31 (Tex. Crim. App. 1994), Appellant argues that the Texas Constitution "prohibit[s] inventories of closed containers in the context of an inventory[.]" In *Autran*, a three-judge plurality held that article I, section 9 of the Texas Constitution provided broader protection than the Fourth Amendment, applied the Texas provision to inventory searches, and concluded that the Texas Constitution did not allow for opening closed containers. *Autran*, 887 S.W.2d at 41-42. However, "[p]lurality opinions do not constitute binding authority." *See Unkart v. State*, 400 S.W.3d 94, 100 (Tex. Crim. App. 2013) (citing *Vasquez v. State*, 389 S.W.3d 361, 370 (Tex. Crim. App. 2012); *Thornton v. State*, 145 S.W.3d 228, 234 (Tex. Crim. App. 2004)). The Court of Criminal Appeals has

12

not followed *Autran*'s specific holding concerning the validity of inventories of closed containers under the Texas Constitution. *See Rothenberg*, 176 S.W.3d at 59 ("[T]he high court has never followed *Autran*'s specific holding concerning the validity of inventories of closed containers under the Texas Constitution."); *see also Uballe*, 439 S.W.3d at 385 (rejecting the argument that the Texas Constitution provides greater protection against unreasonable searches and seizures than the United States Constitution and declining to apply the *Autran* plurality opinion); *Garza v. State*, 137 S.W.3d 878, 884 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (explaining that the plurality holding in *Autran* is not binding precedent) (citing *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992)); *Trujillo v. State*, 952 S.W.2d 879, 881 (Tex. App.—Dallas 1997, no pet.) ("*Autran*, a three-judge plurality opinion, is not binding precedent.") (citing *Vernon*, 841 S.W.2d at 410). Accordingly, *Autran* is not binding precedent.

### ANALYSIS

Officer Leffew testified that he determined it was necessary to have Perkins's vehicle impounded because Perkins did not have a valid driver's license, Perkins did not have proof of insurance, the vehicle was not properly registered, and the vehicle was parked in a place that obstructed traffic. Leffew also testified that the regular practice of the Daisetta Police Department was to impound

13

vehicles that lacked insurance and registration and that he impounded the vehicle in a manner consistent with his training and the policy of the department.

The evidence at the suppression hearing did not address alternatives to impoundment, nor does Appellant suggest in his brief on appeal that there were any alternatives. Based upon the record before us, the trial court did not err in concluding that the State met its burden of proving the impoundment of Perkins's vehicle was lawful. *See Josey*, 981 S.W.2d at 842 (citing factors police may consider when determining whether to impound a vehicle).

Officer Leffew testified that, when a driver is arrested and his automobile is to be impounded, it is the policy of the Daisetta Police Department to prepare a written inventory of the contents of the automobile to document any items present, including the contents of closed containers found therein, and to protect the property of the arrested driver. Leffew further testified that he conducted an inventory of the vehicle Perkins was driving and that he inventoried the vehicle's contents in accordance with the policy of the Daisetta Police Department.

The trial court was free to believe Leffew's testimony at the suppression hearing. *See Ross*, 32 S.W.3d at 855. There was no showing that Officer Leffew, who testified that he was following standardized procedures, acted in bad faith or for the sole purpose of investigation or that the inventory search was a ruse for

14

generally rummaging through the vehicle in order to discover incriminating evidence. *See Wells*, 495 U.S. at 4; *Bertine*, 479 U.S. at 371-74. Although Officer Leffew did not list every item discovered in the vehicle on the inventory form, an inventory search may nonetheless be reasonable even though the inventory form does not list every item found in the vehicle. *See Uballe*, 439 S.W.3d at 385; *St. Clair*, 338 S.W.3d at 724-25.

Viewing the evidence in a light most favorable to the trial court's ruling, the record supports an implied finding by the trial court that the Daisetta Police Department had an inventory policy and that Officer Leffew followed the policy. *See Moskey*, 333 S.W.3d at 700 (citing *Moberg*, 810 S.W.2d at 195) (explaining that the State satisfies its burden of proof by showing that an inventory policy exists and that law enforcement followed the policy); *see also Jackson*, 468 S.W.3d at 199 (concluding that because the evidence was found during a lawful inventory search, the trial court did not err by denying the motion to suppress). The trial court could also have reasonably concluded that the inventory procedure of the Daisetta Police Department encompassed closed containers within a vehicle, that the inventory was not left to the sole discretion of Officer Leffew, and that the inventory Leffew conducted was not a pretext or ruse for an investigatory motive. *See Wells*, 495 U.S. at 4; *Moskey*, 333 S.W.3d at 700; *Rothenberg*, 176 S.W.3d at

57. Accordingly, we conclude that the trial court did not err in denying Appellant's Motion to Suppress and we overrule Appellant's issue.

Having overruled Appellant's sole issue on appeal, we affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 3, 2017
Opinion Delivered January 11, 2017
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.