

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00027-CR

———————————————

ROBERT JOE PURYEAR, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 59,856-B

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

A jury found appellant Robert Joe Puryear guilty of unlawful possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04(a)(1). The trial court sentenced Puryear to ten years' confinement. In one point, Puryear asserts that the trial court arbitrarily and capriciously denied his motion to suppress. We affirm.

## Evidence

Officers Brayden Little and Mitchell Parker were working together on the evening of January 4, 2018, in a marked patrol car when they saw a Ford pickup truck traveling down Speedway Avenue in Wichita Falls. After running the pickup's license plates through a crime-information database, they learned that the vehicle was not insured, so they made a traffic stop to confirm the lack of insurance.

Officer Little went to the driver's side while Officer Parker went to the passenger's side. Scanning the pickup with a flashlight for safety purposes, Officer Parker spotted a half-opened bag with a green-and-white box containing Remington ammunition.

Meanwhile, Puryear, the driver, told Officer Little that he had just bought the pickup that day, so he did not have insurance covering the pickup. Thinking that perhaps the pickup's seller might still have insurance on the vehicle, Officer Little then spoke with the pickup's registered owner, but she too told Officer Little that the vehicle was uninsured.

Officer Little informed Puryear that city policy required the police to impound uninsured vehicles and that he was going to inventory the pickup; Officer Little then asked Puryear if he had "anything illegal" in his vehicle. Puryear responded, "Not that I know of." Following up with specific examples, Officer Little asked about drugs or guns, and Puryear answered that he was not allowed to have a gun because he was a convicted felon. After Puryear became disgruntled with having his pickup impounded, Officer Little again asked Puryear if he had anything in his vehicle, and Puryear again said, "Not that I know of," and added, "I just bought this truck." This response struck Officer Little as typical of persons who were less than straightforward, so Officer Little asked Officer Parker, who had been on the passenger side, to come to the driver's side and watch Puryear while Officer Little went back to the patrol car's computer to verify the vehicle's insurance status.

When Officer Little again returned to the pickup, Officer Parker relayed that he had seen a box of ammunition and that he too had asked Puryear if he had anything illegal in the car and that Puryear had responded, "If I have a gun in the vehicle, will I get in trouble for it[?]" Being aware of the box of ammunition and hearing Puryear express concern about getting caught with a gun in the vehicle, the two officers removed Puryear from the pickup for their own safety.

Puryear did not give the officers consent to search his pickup. On the video of the stop, one of the officers can be heard saying, "We're getting in the vehicle anyway."

3

Officer Parker began then the inventory while Officer Little watched Puryear. Officer Parker found a loaded pistol in the unlocked glove compartment and recovered the box of ammunition that he had seen earlier. Officer Parker then arrested Puryear for being a felon unlawfully in possession of a firearm.

In addition to testifying about the events that evening, the officers discussed their police department's policy regarding inventory searches. The department had a written policy requiring officers to impound vehicles for failure to maintain financial responsibility and also requiring officers to inventory any impounded vehicle. Officer Little explained that such a search ensured that drivers could get all their property back and protected the police and tow-truck operators from theft accusations. In conjunction with the inventory search of Puryear's truck, the officers used a "Vehicle Impound Report" form with a section titled "Vehicle Inventory"; Officer Parker completed the form in this case. Precisely how to inventory a vehicle was not set out in a written policy but was taught through field training after officers left the academy.

## Contention

In one point, Puryear argues that the inventory search was unlawful because the trial court applied the wrong legal standard after the officers acknowledged—in violation of the proper legal standard—that they did not have and therefore could not have followed any standardized inventory procedure.[1]

---

[1]Puryear cites both the United States and Texas Constitutions but does not argue that the Texas constitution provides any greater protection. *See* U.S. Const.

## Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

---

amend IV; Tex. Const. art. 1, § 9. We thus limit our analysis to the United States Constitution. *See Lagrone v. State*, 942 S.W.2d 602, 612 (Tex. Crim. App. 1997); *Dill v. State*, No. 04-10-00419-CR, 2011 WL 3610109, at *3 (Tex. App.—San Antonio Aug. 17, 2011, pet. ref'd) (mem. op., not designated for publication).

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

Even if the trial court gave the wrong reason for its ruling, we must uphold the ruling if it is both supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

**Applicable Law**

The Fourth Amendment permits officers to inventory an automobile when lawfully impounding it. *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S. Ct. 3092, 3100 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980); *Garza v. State*, 137 S.W.3d 878, 882 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)). Inventory searches protect (1) the vehicle owner's property while the vehicle is impounded, (2) the police against disputes over lost or stolen property, and (3) the police from potential danger. *Id.* (citing *Opperman*, 428 U.S. at

6

369, 96 S. Ct. at 3097; *Garza*, 137 S.W.3d at 882). Officers must conduct inventory searches in good faith and in accordance with reasonable standardized police procedure. *Id.* (citing *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S. Ct. 738, 742 (1987); *Rothenberg v. State*, 176 S.W.3d 53, 57 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *Garza*, 137 S.W.3d at 882)). The search must be designed to inventory the vehicle's contents and may not be used as a "ruse for a general rummaging in order to discover incriminating evidence." *Id.* (quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990); citing *Richards v. State*, 150 S.W.3d 762, 771 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc)).

Either established routine or standardized criteria must regulate the opening of closed containers during an inventory search. *Richards*, 150 S.W.3d at 771 (citing *Wells*, 495 U.S. at 4, 110 S. Ct. at 1635; *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991) (quoting *Bertine*, 479 U.S. at 372–73, 375–76, 107 S. Ct. at 741–42, 743)). The opening and inventorying of easily accessible containers serves both to protect the owner's property and to insure against false claims. *Id.* (citing *Illinois v. Lafayette*, 462 U.S. 640, 647–48, 103 S. Ct. 2605, 2610 (1983) (holding that opening and inventorying a shoulder bag was reasonable despite the possible alternative of securing the bag as a whole)).[2]

---

[2]In *Cady v. Dombrowski*, the Supreme Court held that it was not unreasonable within the meaning of the Fourth and Fourteenth Amendments for an officer to unlock a vehicle's trunk to look for another police officer's revolver—which was described as the department's standard procedure—after (1) the other officer had

The State shoulders the burden of establishing that the police conducted a lawful inventory search. *Moskey*, 333 S.W.3d at 700. The State satisfies this burden by showing that (1) an inventory policy exists and (2) the officers followed the policy. *Id.* (citing *Moberg*, 810 S.W.2d at 195).

## Discussion

Puryear contends that the trial court applied the wrong standard. When ruling against Puryear, the trial court said,

> The defense has really focused its attention on the fact of wanting there to be a procedure for how the inventory shall be conducted. The Court finds that any procedure [or any specific instruction about how to conduct the inventory] that . . . , would not take the place of requiring that the search be reasonable. The only purpose of the instruction would be to give the police some guidance in conducting their inventory, but even if there were instructions that had been promulgated specifically stating how [a] vehicle inventory should be made, it would still be necessary that the search be reasonable.
>
> So the Court finds that the reasonable standard is what will guide the Court, not whether or not there was [a] specific instruction with regard to the manner in which the inventory would be conducted.

In the context of inventory searches, Puryear argues that this is not the law and that the trial court's deviation from the established law was arbitrary and capricious.

---

gotten drunk and had caused an accident, (2) other officers responding to the scene had not been able to locate the drunken officer's revolver, and (3) the drunken officer's vehicle had been towed to a private garage. 413 U.S. 433, 436–37, 442–43, 448, 93 S. Ct. 2523, 2525–26, 2528–29, 2531 (1973). The Court reasoned, "Where, as here, the trunk of an automobile, which the officer reasonably believed to contain a gun, was vulnerable to intrusion by vandals, we hold that the search was not 'unreasonable' within the meaning of the Fourth and Fourteenth Amendments." *Id.* at 448, 93 S. Ct. at 2531.

Perhaps trying to explain the trial court's alleged legal improvisation, Puryear appears to argue that the officers forced the trial court's hand because they had conceded that no written inventory policy existed and that they were otherwise unaware of a specific policy. Puryear notes that the written impoundment form simply states, "When officers of this Department impound a motor vehicle for any reason it shall be inventoried." He then contrasts this with the specific written inventory instructions described in *Roberts v. State. See* 444 S.W.3d 770, 778–79 (Tex. App.—Fort Worth 2014, pet. ref'd). Here, because there was no written standardized policy on how to conduct an inventory (as opposed to filling out an impound form that lists the items found), Puryear implicitly contends that complying with a nonexistent policy is impossible. Finally, underscoring his contention that the search was a ruse, Puryear points to one officer's statement, "We're getting in the vehicle anyway."

But these arguments do not persuade us that the trial court abused its discretion by denying Puryear's suppression motion.

The absence of a written policy is not fatal. *See State v. Molder*, 337 S.W.3d 403, 410 n.7 (Tex. App.—Fort Worth 2011, no pet.). Standardized procedures suffice. *See Moberg*, 810 S.W.2d at 195.

Here, the officers were not left to "wing it"; their training included how to properly perform an inventory. Officer Little testified that such training was fairly intensive:

9

That's . . . mainly covered with officers when they go through field training as soon as they're out of the academy. That's what the inventory—You go through that numerous times through a trained officer when you're going through it. You'll fill out—I don't know even know how many inventory sheets you fill out as you go through training, but it's quite a few.

The purpose, as Officer Little correctly noted, was to ensure that any valuables could be returned to the driver and to protect the police and wrecker services from being accused of stealing something. In addition to items in plain view, glove compartments are reasonable places to look for valuables. Although the officers did not expressly state that their training included searching glove compartments when performing inventory searches, doing so would fall rationally within that training, particularly in the context of impounding a vehicle. *See Richards*, 150 S.W.3d at 771. Indeed, when impounding a vehicle and performing an inventory check, it seems to us that *not* checking an unlocked glove compartment would be jarring—especially because, here, Officer Parker had already seen an ammunition box, and Puryear's responses to inquiries about a gun served only to heighten the officers' concerns.

Part of their training included filling out a "Vehicle Impound Report," and Officer Parker completed one in this case.[3] Completing the inventory section of that form supports the conclusion that the search was part of the caretaking function and

---

[3]At the hearing, Puryear questioned why the gun and the ammunition did not appear on the inventory form. The explanation was that the gun and the ammunition were evidence of a crime, so they were listed on a different form—"Evidence Submittal Report." The gun and the ammunition were not impounded along with the rest of the vehicle but were sent to the police department's property room.

was not just a ruse. *See Marcopoulos v. State*, 548 S.W.3d 697, 707 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Roberts*, 444 S.W.3d at 779; *Moskey*, 333 S.W.3d at 701–02.

Regarding the officer's comment, "We're getting in the vehicle anyway," the recorded sequence starts with a speaker's (apparently Officer Parker) mentioning that he had seen a box of ammunition and continues with Officer Parker's relating to Officer Little how Puryear had expressed concern about being caught with a gun, Officer Parker's asking Puryear whether he had one, and Puryear's responding that he was a convicted felon and was not allowed to have one. During the conversation between the two officers, Officer Parker tells Officer Little that he does not believe Puryear's denials, and Officer Little responds that he too believed something was in the vehicle; Officer Little concludes, "We're getting in the vehicle anyway."

Simply because the officers suspected or anticipated finding a firearm does not change the analysis if the search was otherwise reasonable under the circumstances. *See Stallons v. State*, No. 02-18-00002-CR, 2019 WL 1716412, at *5 (Tex. App.—Fort Worth Apr. 18, 2019, no pet.) (mem. op., not designated for publication). Here, the search was otherwise reasonable. On appeal, Puryear does not contest that the officers had properly detained him, that his vehicle had been uninsured, or that the officers had properly impounded his pickup. The officers' conversation shows that while investigating one offense, they developed reasonable suspicion that Puryear was committing a different one. *See Fisher v. State*, 481 S.W.3d 403, 407 (Tex. App.—Texarkana 2015, pet. ref'd) (noting that if, during an investigation, an officer develops

reasonable suspicion that another offense has occurred, the scope of the initial investigation expands to include the second offense). Viewing the evidence in the light most favorable to the ruling, the exchange between Officers Parker and Little shows that Officer Little recognized that investigating the second offense—unlawful possession of a firearm by a felon—had been simplified considerably because the officers already had a valid basis to search Puryear's vehicle in connection with impounding it for the lack of insurance. *See Wiede*, 214 S.W.3d at 24 (stating appellate standard when reviewing evidence). They did not need a ruse.

Finally, regardless of whether the trial court articulated the proper standard, we hold that it came to the correct legal result. Because both the record and the applicable legal theory support the trial court's ruling, we uphold that ruling.[4] *See Stevens*, 235 S.W.3d at 740; *Armendariz*, 123 S.W.3d at 404.

We overrule Puryear's point.

### Conclusion

Having overruled Puryear's sole point, we affirm the trial court's judgment.

---

[4]Our holding renders Puryear's other arguments moot, so we do not address them. *See* Tex. R. App. P. 47.1.

12

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 28, 2019